IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | § § § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION TO STRIKE BMSI'S LEGALLY INVALID WAIVER, ESTOPPEL, FAILURE TO MITIGATE, AND LACHES DEFENSES, AND NOTICE REGARDING BMSI'S ADMINISTRATIVE AND PROFESSIONAL EMPLOYEE EXEMPTION DEFENSES**

Plaintiff Keith Coffin ("Plaintiff" or "Coffin") files this Motion to Strike Defendant Blessey Marine Services, Inc.'s ("BMSI") legally invalid waiver, estoppel, failure to mitigate, and laches defenses, and notice regarding BMSI's administrative and professional employee exemption defenses, showing in support as follows:

**I.     BACKGROUND**

Coffin is one of approximately 200 Tankermen employed by BMSI in the last three years.[1] BMSI did not pay any of these Tankermen overtime pay, even though they all worked at least 44 hours of overtime each workweek.[2] BMSI claimed the Tankermen were "employed as seaman," and thus were all exempt from the Fair Labor Standards Act's ("FLSA") overtime requirement.[3] In reality, the opposite is true: None of the Tankermen were "employed as

---

[1]  Docket Entry # 15 at 2; Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶ 9.

[2]  Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶ 16; Plaintiff's Complaint (Docket Entry # 1).

[3]  *See* 29 U.S.C. § 201 *et seq*. Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶ 19; Plaintiff's Complaint (Docket Entry # 1).

seamen," and thus they are all entitled to overtime pay under the FLSA.[4] For that reason, on January 17, 2011, Plaintiff filed this FLSA collective action case for unpaid overtime.[5]

BMSI filed its answer on Friday, March 4, 2011.[6] BMSI asserted defenses that are legally invalid in a FLSA case, such as waiver, estoppel, failure to mitigate, and laches.[7] Approximately 1 hour and 15 minutes after BMSI filed its answer, Plaintiff's counsel sent BMSI's counsel an e-mail informing him that waiver, estoppel, failure to mitigate, and laches defenses are legally invalid in an FLSA case, and provided BMSI's counsel with many case law citations to that effect. Plaintiff's counsel asked that BMSI withdraw those legally invalid defenses by Friday, March 11, 2011. A week then passed with no communication on this issue.

On Friday, March 11, 2001, BMSI's lawyer asked for more time to consider Plaintiff's request. In response, Plaintiff's counsel extended the deadline until Wednesday, May 16, 2011, at noon. At approximately 11:30 a.m. on Wednesday, May 16, 2011, BMSI's informed Plaintiff's counsel that BMSI would not withdraw its waiver, estoppel, failure to mitigate, and laches defenses. Although he provided Plaintiff's counsel with no case law to support his assertion, BMSI's counsel claimed those defenses were in fact valid. Thus, Plaintiff has no alternative but file this motion to strike those particular legally invalid defenses. *See infra* § II.A and II.B.

Plaintiff also notes in this motion that BMSI's affirmative defenses based on the administrative and professional employee exemptions to overtime are triply meritless and teeter

---

[4] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 10-15; Plaintiff's Complaint (Docket Entry # 1) (explaining law and facts that support claim that BMSI's Tankermen were all misclassified as "exempt" from overtime under the FLSA).

[5] Docket Entry # 1.

[6] Docket Entry # 19.

[7] BMSI's thirteenth affirmative defense, Docket Entry # 19 at p. 3.

precariously on the brink of a Rule 11 violation. *See infra* § II.C. Plaintiff's counsel has informed BMSI's counsel of this too in a detailed e-mail supported by substantial case law citations, but BMSI continues to assert these defenses as well.

## II. ARGUMENT AND ANALYSIS

### A. Legal Standard

Although motions to strike are disfavored, the Court has discretion to strike an affirmative defense if the defense is insufficient as a matter of law. *See F.D.I.C. v. Cheng*, 832 F. Supp. 181, 185 (N.D. Tex. 1993); *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349 (5th Cir. 1983); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d, 1045, 1057 (5th Cir. 1982). What constitutes an invalid defense depends upon the nature of the claim for relief and the defense in question. *See Equal Employment Opportunity Comm'n v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 at 719 (2d ed. 1990)). An affirmative defense is legally insufficient if, in light of sound precedent, it cannot succeed under any factual circumstance. *See Cheng*, 832 F. Supp. at 185 (N.D. Tex. 1993); *F.D.IC. v. Isham*, 782 F. Supp. 524, 530 (D. Colo. 1992).

If the determination of invalidity can be made at an early stage it will enable the parties to proceed with the litigation in the proper posture. *See Owens v. UNUM Life Ins. Co.*, 285 F. Supp. 2d 778, 780 (E.D. Tex. 2003); *Simpson v. Alaska State Comm'n for Human Rights*, 423 F. Supp. 552, 554 (D. Alaska 1976).

### B. Argument And Analysis

BMSI's defenses of waiver, estoppel, failure to mitigate, and laches are legally invalid as a matter of law. It is black letter law that an employee cannot waive FLSA rights. *See, e.g.*, *Perez-Nunez v. North Broward Hosp. Dist.*, No. 008-61583-CIV, 2009 WL 723873, at *2 (S.D.

Fla. Mar. 13, 2009) (holding that the doctrine of waiver is not applicable to FLSA claims); *Beard v. Dist. of Columbia Housing Auth.*, 584 F. Supp. 2d 139 (D.D.C. 2008) (holding that "an otherwise valid accord and satisfaction cannot be a defense to [an] FLSA claim"). In addition, the defenses of estoppel and laches have no application in FLSA cases like this one either, and should be stricken, as they have been by other courts. *See Ayers v. Consol. Const. Servs. Of SW Fla.*, Inc., No. 2:07-cv-123, 2007 WL 4181910, at * 1-2 (M.D. Fla., Nov. 26, 2006) (granting motion to strike laches and estoppel affirmative defenses because of "the general rule that an employee cannot waive her rights under the FLSA without supervision by the Secretary of Labor or the Court"); *Perez-Nunez*, 2009 WL 723873, at *2 ("The doctrines of waiver, estoppel and laches are generally not applicable to FLSA claims.").[8]

BMSI's "failure to mitigate" defense is also legally invalid. As Judge Lee Rosenthal stated just three months ago *Tran v. Thai*, No. H-08-3650, 2010 WL 5232944, at *7 (S.D. Tex., Dec. 16, 2010), "[b]ecause there is no duty to mitigate overtime wages under the FLSA, this

---

[8] Courts have found that estoppel may be asserted under the FLSA under facts not alleged by BMSI in this case and that do not exist in this case – for example, when the plaintiff falsely deflates or does not report his or her overtime hours to the unknowing employer, but then sues the unsuspecting employer for unpaid overtime. That makes perfect sense. Thus, in *Brumbelow v. Quality Mills*, the Fifth Circuit found "[o]n the narrow facts of this case, the court correctly granted a directed verdict on the basis that the appellant was estopped and could not profit from her own wrong in furnishing false data to the employer." 462 F.2d 1324, 1327 (5th Cir. 1972); *see also McGlothan v. Walmart Stores, Inc.*, No. 6:06-CV-94-ORL-28JGG, 2006 WL 1679592, *2 (M.D. Fla. June 14, 2006) (citing *Brumbelow*, F.2d at 1327 and holding that estoppel is an available affirmative defense "where the employee affirmatively misleads the employer."). BMSI had not contended that it was misled or tricked by the Plaintiff or any other Tankerman into classifying all its Tankermen as exempt from overtime, or not paying them for their overtime hours. To the contrary, Plaintiff has provided sworn testimony that he specifically told BMSI that he believed he was entitled to overtime pay under federal law and that, in response, BMSI told him that maritime law, not federal law, applied, so he was not entitled to overtime pay, no matter how many hours he worked. Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶ 19. Plaintiff's sworn testimony is not controverted by BMSI. Nor could it be, because it is indeed true that BMSI, which employs its own human resources staff and in-house legal counsel, classified all the Tankermen as exempt from overtime under the FLSA, and did not pay any of them overtime – even though BMSI itself scheduled them to work at least 44 hours of overtime per work week. *See* Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A at § I.6. Neither Plaintiff nor any other Tankerman is, or even theoretically could be, to blame for BMSI's misclassification of them as exempt from overtime, or working them 44 hours of overtime per work week without paying them overtime pay. BMSI does not and cannot contend otherwise. Accordingly, in this case, as in a recent case decided by Judge Lee Rosenthal, BMSI's estoppel defense is: (a) unsupported by any factual allegation in BMSI's answer; and (b) ruled out as a matter of fact, law, and logic. *See, e.g., Tran v. Thai*, No. H-08-3650, 2010 WL 5232944, at *8 (S.D. Tex., Dec. 16, 2010) (Rosenthal, J.) (granting summary judgment against estoppel defense in an FLSA case where, as here, the defendants did not assert that the plaintiff had somehow affirmatively misled them to their disadvantage).

4

court grants the plaintiff's motion for summary judgment as to this affirmative defense." In reaching this conclusion in the *Tran* case, Judge Rosenthal correctly observed that many courts have found that as a matter of law "there is no requirement to mitigate overtime wages under the FLSA." *Id*. (citing *King v. ITT Educ. Servs., Inc*., No. 3:09-cv-848, 2009 WL 3583881, at *3 (M.D. Fla., Oct. 27, 2009)), and other cases.[9]

Hence, BMSI's "failure to mitigate" defense should be stricken too. *See, e.g., Gonzalez v. Spears Holdings, Inc*., No. 09-60501-CV, 2009 WL 2391233, at *3 (S.D. Fla., July 31, 2009) (granting a motion to strike mitigation-of-damages affirmative defense because there is no duty to mitigate damages under the FLSA, nor a duty to provide notice as to any alleged unlawful pay practice); *Lopez v. Autoserve LLC*, No. 05 C 3554, 2005 WL 3116053, at *2 (N.D. Ill., Nov. 17, 2005) (granting the plaintiff's motion to strike mitigation-of damages affirmative defense because there is no duty to mitigate damages under the FLSA); *Perez-Nunez,* 2009 WL 723873, at *2 (granting motion to strike the mitigation-of-damages affirmative defense and holding that a duty-to-mitigate-damages defense based on the plaintiff's failure to timely disclose alleged violations to her employer so that the terms of her employment could be corrected failed as a matter of law under the FLSA).

### C. BMSI's "Administrative" And "Professional" Employee Exemption Defenses Are Clearly Meritless For At Least Three Fundamental Reasons, And Both Defenses Teeter On The Brink Of Violating Rule 11

In its answer, BMSI also claimed that Plaintiff was exempt from overtime pay as an "administrative" or "professional" employee.[10] These two affirmative defenses can succeed in some factual circumstances in certain FLSA cases – although, in its answer, BMSI fails to

---

[9] In *Tran*, Judge Rosenthal also threw out as a matter of law the employers' defenses based on laches, waiver, and estoppel. *See Tran,* 2010 WL 5232944, at *8.

[10] BMSI's third and fourth affirmative defenses, Docket Entry # 19 at p. 3.

provide any facts to suggest that they could apply in this case. In truth, as explained below, the administrative and professional employee exemptions have no possible application in this case. In an e-mail, Plaintiff's counsel explained these same reasons to BMSI's counsel. Yet, BMSI refuses to withdraw these inapplicable two affirmative defenses.[11]

It is indisputable that Plaintiff – and all the other Tankermen:

- Were paid based on a day rate for each day they worked, rather than on a salary basis that did not vary depending on the quantity of work they performed.[12]

- Do not work in offices.[13]

- "[M]ust be able to endure a harsh environment affected by extremes in temperature, rain, ice, sleet, wind, and wave action.[14]

- Perform manual work loading and unloading barges and tasks closely related to loading and unloading barges.[15]

- "[M]ust be able to perform **heavy** physical labor as classified by the United States Department of Labor . . . ."[16]

- Do not perform work related to the management or general business operations of BMSI.[17]

- Do not perform as their primary duty work requiring advanced knowledge in a field of science or learning that is predominantly intellectual in character and includes the consistent exercise of discretion and judgment.[18]

---

[11] BMSI's third and fourth affirmative defenses, Docket Entry # 19 at p. 3.

[12] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 16-17, 19; BMSI's Answer, Docket Entry # 19 at ¶ 37.

[13] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 10-12; Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A.

[14] See Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A at § VIII.

[15] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 10-12; Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A.

[16] Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A at § XII (bold in original).

[17] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 10-12; Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A at § VII.

[18] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 10-12; Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A.

- Do not develop the knowledge they need to perform their jobs through a prolonged course of specialized intellectual instruction – BMSI only requires them to a formal education consisting of "[h]av[ing] a high school diploma or GED."[19]

These indisputable facts rule out the administrative or professional employee exemptions in this case for at least three fundamental reasons. First, to qualify for either exemption, BMSI had to have paid Plaintiff and the other Tankermen on a "salary basis." *See Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332 (5th Cir. 2000) (administrative employee exemption requires compliance with salary basis test); *Belt v. EmCare, Inc.*, 444 F.3d 403, 407 (5th Cir. 2006) (professional employee exemption requires compliance with salary basis test). An employee is considered to be paid on a "salary basis" if they regularly receive each pay period a predetermined amount constituting all or part of their compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. *See* 29 C.F.R. § 541.602(a).

BMSI did not compensate Plaintiff or the other Tankermen on a "salary basis." Rather, BMSI paid them all a "day rate,"[20] which is inherently incompatible with the "salary basis" test because they do not receive pay on days they do not work, so their pay does vary based on the quantity of their work. *See Cunningham v. Faerber's Bee Window, Inc.,* No. 1:04CV500-LJM-VSS, 2005 WL 1123634, at **2-3 (S.D. Ind., Apr. 19, 2005) (paying employee based on day rate violated "salary basis" test); *DuFrene v. Browning-Ferris, Inc.*, 994 F. Supp. 748, 754 (E.D. La. 1998) (observing that a day rate pay plan is inherently incompatible with the salary basis test), *aff'd*, 207 F.3d 264 (5th Cir. 2000). That BMSI's Tankerman's pay varies based on the quantity of their work – and thus is not compliant with the "salary basis" test – is also proven by the fact

---

[19] Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A.

[20] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 16-17, 19; BMSI's Answer, Docket Entry # 19 at ¶ 37.

that their regular day rate is reduced by 50% on travel days to and from their assigned towboats.[21] Thus, BMSI's "day rate" pay system violates the "salary basis" test. That alone rules out either the administrative or professional employee exemption as a matter of law. *See, e.g. Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 454 (W.D.N.Y. 2010) (granting summary judgment for employee in a FLSA case because it was obvious that the employer violated the "salary basis" test).

Second, in any event, to qualify for either the administrative or the professional employee exemption, BMSI would also have to prove that Plaintiff and the other Tankermen satisfy specific duties' tests, which they all clearly do not satisfy. Specifically:

- To qualify for the administrative employee exemption, both of the following duties' tests must be satisfied: (a) the employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (b) the employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. White collar news producers working in offices do not satisfy this exemption. *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1231 (5th Cir. 1990) (administrative exemption does not apply to news producers who perform production work and do not perform duties directly related to general business operations such as advising their employer's management, planning business strategies, or negotiating contracts). Tankermen even more obviously do not satisfy this exemption. To even try to claim otherwise is facially frivolous.

- To qualify for the learned professional employee exemption, all of the following duties' tests must be satisfied: (a) the employee's primary duty must be the performance of work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment – not just skill; (b) the advanced knowledge must be in a field of science or learning; and (c) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. § 541.301. The Tankermen satisfy none of these three tests. *See Vela v. City of Houston*, 276 F.3d 659, 675 (5th Cir. 2001) (explaining that EMTs and paramedics are not exempt professionals because they are not required to have an advanced degree in any specified field, so they, "lack the educational background to satisfy the education prong of the Learned

---

[21] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶ 17.

Professional exemption"); *Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ("product design specialist" was not within professional exemption from FLSA's overtime-pay provision, even though he performed work requiring depth of knowledge, experience, skill, and responsibility, because the position required no formal advanced education, and the knowledge required for job was not customarily acquired by prolonged course of specialized intellectual instruction, *i.e.* most persons in position acquired their knowledge through experience); *Fife v. Harmon*, 171 F.3d 1173, 1177 (8th Cir. 1999) (the minimum qualifications for the plaintiffs' position as Airfield Operation Specialists were "a Bachelor's degree in aviation management or a directly related field, or four years of full-time experience in aviation administration, or an equivalent combination of experience and education." The court held the exemption inapplicable: "This is advanced knowledge from a general academic education and from an apprenticeship, not from a prolonged course of specialized intellectual instruction."). Under this demanding test, it is frankly ridiculous to claim that Plaintiff or any of the Tankermen are learned professionals under the FLSA.[22]

Third, even more fundamentally than the two reasons set out above, the administrative or professional employee exemption could not apply here because Plaintiff and the other Tankermen are, without dispute, "blue collar workers" to whom these exemptions do not even possibly apply. *See* 29 C.F.R. § 541.3 (blue collar workers are not subject to the FLSA's white collar exemptions, such as the administrative or professional exemptions). BMSI's own job description for Tankermen proves the dispositive point. According to BMSI's own job description, Tankermen: (a) must "frequently" or "constantly" perform work involving repetitive operations with their hands, physical skill, and energy;[23] and "must be able to perform **heavy physical labor** as classified by the United States Department of Labor . . . ."[24] By DOL

---

[22] There are two other "professional" exemptions from overtime under the FMLA, for "computer" and "creative" professionals. *See* 29 C.F.R. §§ 541.400 *et seq*. and 541.302. Under BMSI's own job description, there can be no argument that the Tankermen fall within either of these clearly inapplicable exemptions. Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A.

[23] Docket Entry # 8, Affidavit of Keith Coffin, Ex. 2 at ¶¶ 10-12; *See* Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A at § VII (stating that a Tankerman must "frequently" perform lifting, carrying, pushing, pulling, and climbing, and must "constantly" be standing, walking, body twisting, reaching, and exercising manual dexterity).

[24] Docket Entry # 8, BMSI's Job Description for the Tankerman job, Ex. 2-A at § XII (bold in original).

9

regulation, such "blue collar workers" are not even subject to the administrative or professional exemptions in the first place. *See* 29 C.F.R. § 541.3.

In sum BMSI's assertion that Plaintiff's FLSA claim (or any other Tankerman's FLSA claim) is barred by the administrative or professional employee exemption is groundless. First, Plaintiff and the other Tankerman were not paid on a "salary basis." Second, they did not perform the duties of an exempt administrative or professional employee. Third, because – by BMSI's own job description and the undisputed facts – they are "blue collar workers," they are not even subject to the administrative or professional employee exemptions to begin with. *See supra*. Therefore, BMSI should voluntarily withdraw its administrative and professional employee exemption defenses in a timely fashion or risk falling into Rule 11's grasp. *See, e.g.*, *Williams v. R.W. Cannon, Inc.*, NO. 08-60168-CIV-UNGARO, 0860168-CIV-SIMONTON, 2008 WL 4372894, at *4 (S.D. Fla., Sep 24, 2008) (sanctioning employer under Rule 11 in FLSA case because its unreasonable denials of liability forced employee to incur additional costs to prosecute case). Plaintiff's counsel has informed BMSI's counsel of this in writing, but BMSI's counsel has persisted with these defenses.

Plaintiff's counsel has no desire or intent to seek sanctions from anyone in this case. But, he should not be forced to continue to spend his time – or the Court's valuable time – addressing blatantly baseless defenses that BMSI never should have brought in the first place.

### III. CONCLUSION

Plaintiff prays that the Court grant his motion and strike BMSI's legally invalid waiver, estoppel, failure to mitigate, and laches defenses from BMSI's answer. Plaintiff has provided the Court with a proposed order granting the requested relief. Finally, Plaintiff prays for all other relief to which he is justly entitled.

        Respectfully submitted,

        OBERTI SULLIVAN LLP

By:   s/ Mark J. Oberti
       Mark J. Oberti
       Texas Bar No. 00789951
       Southern District ID. No. 17918
       723 Main Street, Suite 340
       Houston, Texas 77002
       (713) 401-3555 – Telephone
       (713) 401-3547 – Facsimile

       ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL

OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF CONFERENCE

    I hereby certify that prior to filing this motion I conferred in good faith with Defendant's counsel about the filing of this motion, and he is opposed to the granting of the relief sought by this motion.

        s/ Mark J. Oberti
        Mark J. Oberti

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument was served to all counsel of record, as listed below, by CM/ECF on this the 16th day of March 2011.

Steven F. Griffith, Jr.
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170

Thomas J. "Beau" Bethune IV
General Counsel
Blessey Marine Services, Inc.
1515 River Oaks Rd. E.
Harahan, Louisiana 70123

Shelia Ashabranner
Case Manager to Judge Nancy F. Atlas
Email: *shelia_ashabranner@txs.uscourts.gov*

                                                           s/ Mark J. Oberti
                                                           Mark J. Oberti