IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § § § § § § § § | |
| Plaintiffs, | | |
| V. | | CIVIL ACTION NO. 4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | | |
| Defendant. | | |

**PLAINTIFFS' EMERGENCY MOTION FOR AN INJUNCTION, TO ISSUE CORRECTIVE NOTICE, FOR SANCTIONS, AND FOR HEARING**

Plaintiffs file this emergency motion for an injunction, to issue a corrective notice, and for sanctions. Plaintiffs also request a hearing.

**I.    Introduction**

Plaintiffs and Blessey Marine Service, Inc. ("BMSI") battled intensely for five months over whether this FLSA case should be conditionally certified. On July 28, 2011, the Court granted Plaintiffs' motion to conditionally certify a collective class and gave Plaintiffs permission to send the potential opt-in plaintiffs a Court authorized notice. (Docket Entry No. 56). Thereafter, BMSI took a very devious action to make Plaintiffs conditional certification, and the Court's ruling, hollow and meaningless.

Specifically, before Plaintiffs sent the Court authorized notice to the putative opt-in plaintiffs, BMSI sent its own *ex parte* letter on its outside counsel's letterhead to 197 members of the putative class. (Ex. 2). BMSI strategically sent its *ex parte* letter out two days before the Court authorized notices were sent to the putative plaintiffs. BMSI's letter was an unfair, misleading attempt to undermine the collective action Plaintiffs had fairly fought to obtain. BMSI's letter even included statements this Court had specifically declined to include in the

Court authorized notice regarding the recovery of costs if BMSI prevailed. (Docket Entry No. 56, at 2). BMSI's unilateral letter to 197 of the potential opt-ins amply justifies the imposition of an injunction, an order to issue corrective notice, and sanctions. *See, e.g., Belt v. EmCare Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (ordering all three in similar situation where employer's unilateral letter undermined the collective action the court had certified in an FLSA case).

What makes BMSI's actions especially egregious is the fact that Plaintiffs' counsel cited the *Belt* decision to BMSI on July 29, 2011, the day after the Court certified this case. (Ex. 1, at last page of the exhibit). Nevertheless, BMSI plowed forward with its misleading *ex parte* letter. (*Id.*). Apparently, BMSI took *Belt* not as a cautionary tale that it should avoid repeating, but, rather, as a blueprint to effectively undermine a collective action. As in *Belt*, BMSI should be enjoined from further *ex parte* communications with the putative class members, ordered to send a corrective notice, and sanctioned. But, the sanctions here should be more severe than those in *Belt*. Harsher sanctions are warranted in this case because BMSI knew of *Belt* and proceeded forward anyway. (Ex. 1, at last page of the exhibit). BMSI must have factored the sanctions it was likely to face under *Belt* into its analysis, and concluded that the benefit to undermining the class outweighed the cost of the likely sanctions to BMSI. The sanctions against BMSI should be stringent enough should teach BMSI that its *Ford Pinto*-like analysis was mistaken.

## II.     Factual Background

On July 28, 2011, the Court granted Plaintiffs' motion for conditional certification and to issue notice in this FLSA case. (Docket Entry No. 56). The Court declined BMSI's request to include a statement in the notices that ". . . if Blessey Marine wins the case, it may be entitled to recover its costs in defending the action against those who joined it." (*Id.* at 13). The Court ordered the notices to be sent by Plaintiffs "on or about August 11, 2011." (*Id.*).

On July 29, 2011, Plaintiffs' counsel sent BMSI's counsel an e-mail and letter citing the aforementioned *Belt* decision, and advising him that if Plaintiffs "learn of any improper communication or conduct designed to deter or dissuade any of the putative Plaintiffs from opting into this case, appropriate action will be taken." (Ex. 1, at last page of exhibit). As even the Court had noted, BMSI previously had engaged in some unfair behavior in defending the case.[1] Plaintiffs' counsel hoped that by promptly sending this e-mail and letter to BMSI's counsel, BMSI would not do anything improper that would require the Court to spend more of its valuable time ruling on yet another dispute between the parties in this case. Plaintiffs' counsel never anticipated that instead BMSI would use the *Belt* decision as a blueprint to follow for bad behavior. The undersigned also never anticipated that BMSI might just conclude that the sanctions the employer received in *Belt* were worth the price to undermine the class.

On August 9, 2011, BMSI's counsel e-mailed Plaintiffs' counsel the list of 274 potential opt-in members for him to send the notices. BMSI's counsel sought confirmation that Plaintiffs' counsel would not mail the notices out until August 11, 2011. Although the undersigned did not know why BMSI's counsel was so concerned about this seemingly minor point, Plaintiffs' counsel immediately provided that confirmation to BMSI's counsel. However, unbeknownst to Plaintiffs' counsel, on that very same day, August 9, 2011, BMSI's counsel unilaterally sent the 197 potential opt-in claimants who were still employed by BMSI a letter on his law firm's letterhead designed to deter or dissuade them from opting into this case (Ex. 2).[2] This revealed why BMSI's counsel wanted to be sure that Plaintiffs' counsel was not going to send out the notices until August 11, 2011 – BMSI wanted to get to 197 of the potential class members first,

---

[1] *See, e.g.*, Docket Entry No. 53, Transcript of Hearing on 06/07/11, at 46-48.

[2] Exhibit 2 is one of the letters sent by BMSI's counsel on August 9, 2011. The 196 others are exact duplicates.

3

so it could prejudice them against the Court authorized letter they would be receiving two days later.

The primary messages of BMSI's *ex parte* letter to the 197 potential opt-ins were as follows:

- There is little or no financial upside to them to join the suit, because if the Court decides that Tankerman have to be paid on an hourly basis, it will calculate an hourly rate for them equivalent to their day rate.  "In other words, your future pay will not change much, if at all, based on the lawsuit." (*Id*. at 1).[3]

- If they do join the suit, they may have to submit to a deposition or provide other information. (*Id*. at 2).

- If BMSI wins the suit, it "may be entitled to reimbursement of a portion of its costs from anyone who joined it." (*Id*. at 2).

- The lawsuit is about "pay that you have already received, and pay you are receiving now if you are currently employed by Blessey Marine. (*Id*. at 1).  No mention is made that the lawsuit is really about pay they did **not** receive in the past.

Two days later, on August 11, 2011, unaware that BMSI's counsel had sent the letter, Plaintiffs' counsel mailed off the 274 opt-in notices.  Four days later, on August 15, 2011, Plaintiffs' counsel received copies of the August 9, 2011, letters BMSI sent to the 197 potential opt-in plaintiffs who still worked from BMSI.  At that time, Plaintiffs' counsel realized why BMSI's counsel had been so concerned about confirming that the Court authorized notices were not going to be sent out until August 11, 2011 – BMSI wanted to, and did, beat Plaintiffs to the punch.

Plaintiffs now file this timely emergency motion for relief, even though they wish this had never happened.  Plaintiffs can only conclude that BMSI must believe that any sanction this

---

[3] This representation stands in some contrast to what BMSI represented to the Court in its motion for summary judgment. (Docket Entry No. 45).  There, in an effort to convince the Court that it would suffer a financial hardship if the Tankerman were found to be non-exempt, BMSI represented that "to preserve the natural increase in the pay scales of persons promoted from Deckhand to Tankerman to Pilot to Relief Captain and then Captain, the compensation of a Tankerman to a non-exempt employee would require adjustment of his pay."  *Id*. at 17 n. 49.

Court may issue is a tiny price to pay in return for tainting 197 potential class members, each of whom likely have FLSA claims in the six-figures.[4]

### III. Argument And Analysis

#### A. Legal Standards

Courts have the authority, pursuant to section 216(b), "to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (citing FED. R. CIV. P. 83); *see also Belt*, 299 F. Supp. 2d at 667. As district courts have "both the duty and the broad authority to exercise control . . . and to enter appropriate orders governing the conduct of counsel and parties" in Rule 23 class actions, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L.Ed.2d 693 (1981), they possess this same duty and broad authority in managing section 216(b) collective actions, since a similar potential for abuse exists. *Hoffmann-La Roche Inc.*, 493 U.S. at 171.

A court may not limit communications "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Gulf Oil Co.*, 452 U.S. at 102 (Rule 23 context). The "mere possibility of abuses" does not justify routine adoption of a

---

[4] The damages in this case are likely to be significant for any prevailing plaintiff, primarily for two reasons. First, Tankermen at BMSI each worked 44 hours of overtime per workweek without overtime pay. That is an unusually large amount of unpaid overtime hours each week. Second, those overtime hours are to be compensated at time and one-half their regular rate, rather than one-half their regular rate, due to the fact that BMSI's supposed "day rate" pay plan does not comply with the FLSA's "day rate" regulation, 29 C.F.R. § 778.112. BMSI did not comply with the day rate regulation because it did not pay the Tankermen the same flat sum for a day's work or for doing a particular job, without regard to the number of hours they worked in the day or at the job. For example, on partial workdays, associated with travel to and from the vessel, BMSI paid Plaintiffs and other Tankermen half their normal day rate. This is inconsistent with the day rate regulation, and destroys the half time overtime methodology. *See, e.g., Solis v. Hooglands Nursery L.L.C.*, 372 Fed. Appx. 528, 529, 2010 WL 1404022, at *1 (5th Cir. Apr. 7, 2010) (employer did not have a valid day rate plan under the regulations where, as here, their employees' pay was reduced when they worked less than a full day). BMSI also did not comply with the day rate regulation because BMSI paid Plaintiff and other Tankermen other forms of compensation for their services, not just the flat day rate. The day rate regulation specifically prohibits this. *See* 29 C.F.R. § 778.112.

communications ban. *Id*. at 104; *Lee v. American Airlines*, 3:01-CV-1179-P, 2002 WL 226347, at *2 (N.D. Tex. Feb. 12, 2002) (Rule 23 context). While actual harm need not be proved to justify an order limiting class contacts, *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994), the movant must at least present evidence that a potential likelihood for serious abuse exists. *Id*.; *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997) (Rule 23 context).

An order restricting communications between parties and potential class members should be based upon "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101. If a court decides to limit contact between parties or their counsel and potential class members, it should issue "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102; *Hampton Hardware, Inc.*, 156 F.R.D. at 632. In other words, because of First Amendment concerns, courts must tailor any restrictions they impose upon a party's ability to communicate with absent class members. *Belt*, 299 F. Supp. 2d at 667. The court must find that the relief sought would be consistent with the policies of section 216(b) and the Federal Rules of Civil Procedure, giving explicit consideration to the narrowest possible relief, which would protect the respective parties. *Cf. Hoffmann-La Roche*, 493 U.S. at 172-73; *Gulf Oil Co.*, 452 U.S. at 102.

Communications from employers to employees deserve particular scrutiny. As the *Belt* court observed, an employer's letter to its employees have the "heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive." *Belt*, 299 F. Supp. 2d at 668 (citations omitted).

The court in *Belt* set forth a two-part test for determining whether an order limiting a party's speech with absent class members should issue. First, a court decides whether there is a need for a limitation on speech, and does so by determining whether the party's speech is "misleading, coercive, or an attempt to undermine the collective action." *Belt*, 299 F. Supp. 2d at 668. If the court concludes that a basis for restricting speech exists, it should then "tailor appropriate injunctions and sanctions in light of First Amendment concerns." *Id*.

In *Belt*, the employer of the potential class members unilaterally mailed a letter to absent class members misrepresenting issues in the action by discouraging absent class members from joining the suit. The employer misrepresented facts about the pending FLSA lawsuit, misrepresented the damages available in the lawsuit, and threatened the job security of the putative plaintiffs. *Id*. at 666-67. As a result, the district court judge enjoined the defendant from *ex-parte* communications with putative collective action members, ordered that a corrective notice be sent, sanctioned the defendant to pay all costs associated with the motion, and granted the putative plaintiffs 30 extra days to opt-in. *Id*. at 669-70.

    **B.**    **Analysis**

        **1.**    **BMSI's Letter Is The Type Of Communication That The Court Has The Authority And The Duty To Restrict**

Regarding the first part of the two-part test in *Belt*, there is a need to limit BMSI's speech with the potential opt-in claimants, because BMSI's letter was "misleading, coercive, or an attempt to undermine the collective action." *Belt*, 299 F. Supp. 2d at 668. BMSI's unilateral letter is both misleading and an attempt to undermine the collective action. BMSI's letter includes language about the opt-in claimants' potential obligation to pay its costs that the Court specifically considered and rejected (*compare* Docket Entry No. 56 at 13 *with* Ex. 2 at 2). This is the sort of conduct that justifies the relief sought in this motion. *See, e.g., Impervious Paint*

7

*Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 723 (D.C. Ky. 1981) (improper contact included a copy of the class notice along with oral advice which had been specifically omitted from the notice prepared by the Court); *see also In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983) ("If this Court permits the defendants to make an end-run around its supervisory authority, the principle that will be established for future class actions is unconscionable.").

BMSI's letter also misleadingly suggests that there is little or nothing to gain by joining the suit (as their pay won't change much, if at all), but there is potential time (depositions to submit to) and money (possible payment of BMSI's costs) to lose. (Ex. 2). This cleverly slanted communication is both misleading, and an attempt to undermine the collective action. *See Belt*, 299 F. Supp. 2d at 669 (". . . the Court finds that EmCare's letter was intended to undermine the purposes of the collective action by encouraging absent class members not to join."). Similarly, BMSI's biased description of Plaintiffs' theory of liability, as compared to BMSI's theory of its defenses, is strategically slanted so as to implicitly suggest that Plaintiffs' bare-bones theory is illogical and weak, whereas BMSI's robust theory makes good sense. (Ex. 2 at 1). Likewise, BMSI's description of what the lawsuit is about wrongly and deceptively suggests it is about pay the Tankermen received in the past, rather than pay they did **not** receive in the past. (*Id*.).

The timing of BMSI's misleading letter further demonstrates that its intent was to undermine the collective action. BMSI strategically timed its letter to go out two days before Plaintiffs' counsel sent the Court approved notice. (Ex. 2). That way, by the time the 197 putative class members received the Court approved notice, they had already been tainted by BMSI's "you have almost nothing to gain, but potentially something to lose" message that the Court never approved, and actually specifically rejected, in part. This case presents the exact same timing as in *Belt*. *Belt*, 299 F. Supp. 2d at 665 ("Shortly before Plaintiff mailed the Court's

8

approved notice, Defendants sent their own, unapproved letter to absent class members."). The timing of BMSI's letter is proof positive of its improper intent. *Id.*; *see also In re Federal Skywalk Cases*, 97 F.R.D. at 378 ("The timing of the defendants' acts echo their intent.").

In conclusion, the court's language from *Belt* is on point here:

> Therefore, EmCare's letter is the type of communication that the Court has the authority and the duty to restrict. The Court has found, based on the facts in this case, that EmCare's letter meets three independent standards for restriction as an improper communication with absent class members because it is misleading, coercive, and an attempt to undermine the purposes of a collective action. Defendants' conduct is more egregious in this collective action than it would be in a class action because potential class members must opt into the collective action rather than opt out as in a class action. Moreover, the Court has found that EmCare and its counsel intentionally attempted to undermine the Court-approved notice. Therefore, the Court now turns to appropriate sanctions and remedies.

*Belt*, 299 F. Supp. 2d at 669.

Finally, the lip-service promise of no retaliation in BMSI's letter does not immunize it from the relief sought by Plaintiffs in this motion. The employer's letter in *Belt* contained the same promise, and the court found that was no barrier to granting the plaintiffs the same relief Plaintiffs seek here. *Id.* at 668 n. 8.

## 2. An Injunction, Corrective Notice, And Sanctions Should Be Ordered

Under *Belt*, the second question is what relief is appropriate. The court in *Belt* enjoined the employer from making any *ex-parte* communications with absent class members regarding the case until the end of trial. *Belt*, 299 F. Supp. 2d at 668. The same relief is appropriate here.

The court in *Belt* also ordered the employer and its outside counsel to remedy any prejudice their unauthorized *ex parte* communication created by:

- Issuing a corrective notice on its company's letterhead within 10 days of the court's order.

- Requiring the employer to bear the corrective notice's costs and all reasonable attorneys' fees and costs plaintiff incurred in bringing its motion, including any fees and costs plaintiff incurred in relation to the corrective notice.

- Ordering that all potential class members to whom the employer directed its improper communications be given an additional 30 days to opt into the collective action.

- Reserving the possibility that it would allow putative class members to opt into the class post-verdict.

*Belt*, 299 F. Supp. 2d at 670.

Again, the same relief is appropriate here. But, if that were all the relief the Court granted, it would be inadequate. A bare minimum sanction would reward BMSI for its unlawful gambit. After all, BMSI knew about *Belt* and proceeded forward anyway. (Ex. 1, last page of the exhibit). Plaintiffs' counsel naively believed that by sending BMSI's counsel a letter citing to and summarizing *Belt*, BMSI would be dissuaded from engaging in any improper behavior. (Ex. 1, last page of the exhibit). Instead, BMSI decided to mimic the employer's improper behavior in *Belt* as a model way to undermine a collective action. Having made that choice, BMSI should now be prepared to suffer not only the same consequences as the employer in *Belt,* but also greater consequences. This will demonstrate to BMSI that its cost-benefit analysis was wrong by issuing far greater sanctions than in *Belt*.

### 3. Sanctions Requested Against BMSI For Improper Conduct

Plaintiffs respectfully request that BMSI be: (1) enjoined from making any *ex-parte* communications with absent class members regarding the case until the end of trial; (2) ordered to issue a corrective notice on its Company letterhead within 10 days of the Court's order in the form to be approved by the Court and file a verified notice of compliance with the Court; (3) ordered to post such corrective notice in each of its towboats for 45 days; (4) ordered to afford all 197 potential class members BMSI sent its August 9, 2011 letter an additional 45 days after the Corrective Notice is sent to opt in to the collective action; (5) required to bear the corrective

notice's costs and all reasonable attorneys' fees and costs Plaintiffs incurred in bringing their motion, including any fees and costs plaintiff incurred in relation to the corrective notice; and (6) required to bear the costs and all reasonable attorneys' fees Plaintiffs incurred in bringing their motion for conditional certification and to issue notice and responding to BMSI's various oppositions to same.  Plaintiffs also respectfully request that the Court reserve the possibility that it will allow putative class members to opt in to this case post-verdict.   Plaintiffs further pray for any other relief that is just and appropriate under the circumstances.

## IV.     Conclusion

Accordingly, Plaintiffs' respectfully pray that their emergency motion for an injunction, to issue a corrective notice, and for sanctions be granted.  Plaintiffs further respectfully request a hearing on this motion, and that the Court order that one or more of BMSI's managers or executives who made or approved the decision to send the August 9, 2011 letter to the 197 putative plaintiffs attend the hearing.

                                      Respectfully submitted,

                                      OBERTI SULLIVAN LLP

                    By:     s/ Mark J. Oberti
                            Mark J. Oberti
                            Texas Bar No. 00789951
                            Southern District ID No. 17918
                            723 Main Street, Suite 340
                            Houston, Texas 77002
                            (713) 401-3555 – Telephone
                            (713) 401-3547 – Facsimile

                            ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
Southern District ID No. 24524
Marilynne Gorham
State Bar No. 00790780
Southern District ID No. 19331
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

    I hereby certify that prior to filing this motion I conferred in good faith with Defendant's counsel, Steve Griffith, about the filing of this motion, and he is opposed to the granting of the relief sought by this motion. Mr. Griffith is currently on vacation and will not return to his office until Friday, August 19, 2011.

                                        s/ Mark J. Oberti
                                        Mark J. Oberti

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing instrument was served to all counsel of record, as listed below, by CM/ECF and e-mail on this the 17th day of August 2011.

  Steven F. Griffith, Jr.
  201 St. Charles Ave., Suite 3600
  New Orleans, Louisiana 70170

  Thomas J. "Beau" Bethune IV
  General Counsel
  Blessey Marine Services, Inc.
  1515 River Oaks Rd. E.
  Harahan, Louisiana 70123

                 s/ Mark J. Oberti
                 Mark J. Oberti