IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO.  4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | § § | |
| Defendant. | § § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FOR A TIME AND ONE-HALF
MULTIPLIER TO APPLY SHOULD BMSI BE FOUND LIABLE**

Mark J. Oberti
Texas Bar No. 00789951
Southern District ID. No. 17918
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – Email
ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
Southern District ID No. 24524
Marilynne Gorham
State Bar No. 00790780
Southern District ID No. 19331
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email
mgorham@osattorneys.com – Email
ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

I.    SUMMARY ................................................................................................... 1

II.   UNDISPUTED FACTS RELEVANT TO THIS MOTION.................................. 4

    A.    Procedural Background............................................................................. 4

    B.    Factual Background ................................................................................. 5

III.  ARGUMENT AND ANALYSIS .................................................................... 6

    A.    Legal Standard For Summary Judgment Motions ................................. 6

    B.    Argument And Analysis ......................................................................... 9

        1.    The General Rule Using The Time And One-Half Method For
Calculating Overtime Pay Under The FLSA, And An Example Of
Its Application ........................................................................ 9

        2.    Legal Standards For Valid "Day Rate" Plans Under 29 C.F.R. §
778.112, Which Permit A Half-Time Method Of Calculating
Overtime, And An Example Of Its Application ..................... 10

        3.    BMSI's Self-Titled "Day Rate" Plan Did Not Comply With 29
C.F.R. § 778.112, So It Is Not A Valid "Day Rate" Plan ........................ 11

            a.    BMSI Did Not Comply With The "Day Rate" Regulation
Because It Did Not Pay Plaintiffs A Flat Sum For A Day's
Work For Doing A Particular Job, Without Regard To the
Number Of Hours They Worked In The Day .............................. 11

            b.    BMSI Did Not Comply With The "Day Rate" Regulation
Because It Paid The Plaintiffs Numerous Other Forms Of
Compensation For Their Services, In Addition To The
"Day Rate"................................................................................ 11

        4.    Because BMSI's Self-Titled "Day Rate" Plan Is Not A Valid "Day
Rate" Plan Under 29 C.F.R. § 778.112, BMSI Is Not Entitled To
Pay Overtime Due To Plaintiffs Using The Half-Time
Methodology, But Instead Must Pay Plaintiffs Using The Normal
Time And One-Half Methodology........................................... 14

IV.   CONCLUSION.................................................................................... 15

INDEX OF EXHIBITS ................................................................................ 18

## TABLE OF AUTHORITIES

**CASES**

*Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*,
    343 F.3d 401 (5th Cir. 2003) .................................................................................. 8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .............................................................................................. 7

*Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*,
    289 F.3d 373 (5th Cir. 2002) ................................................................................. 6

*Boudreaux v. Swift Transp. Co.*,
    402 F.3d 536 (5th Cir. 2005) ................................................................................. 7

*Brantley v. Inspectorate America Corp.*,
    ___ F. Supp. 2d ___, ____, Civil Action No. H-09-2439,
    2011 WL 5190122 (S.D. Tex. Oct. 17, 2011) ............................................. 3, 14, 15

*Brumley v. Camin Cargo Control, Inc.*,
    Civil Action No. 08-1798 (JLL), 2010 WL 1644066 (D.N.J. Apr. 22, 2010) ....................... 2, 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................. 6

*Chaney v. Dreyfus Service Corp.*,
    595 F.3d 219 (5th Cir. 2010) ................................................................................. 8

*de la O v. Hous'g Auth. of El Paso*,
    417 F.3d 495 (5th Cir. 2005) ................................................................................. 9

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*,
    530 F.3d 395 (5th Cir. 2008) ................................................................................. 8

*Diamond Offshore Co. v. A & B Builders, Inc.*,
    302 F.3d 531 (5th Cir. 2002) ................................................................................. 7

*DIRECTV Inc. v. Robson*,
    420 F.3d 532 (5th Cir. 2005) ................................................................................. 7

*Donovan v. Grantham*,
    690 F.2d 453 (5th Cir. 1982) ................................................................................. 9

*Duffy v. Leading Edge Products, Inc.*,
    44 F.3d 308 (5th Cir. 1995) ................................................................................... 7

*Hunter–Reed v. City of Houston*,
    244 F. Supp. 2d 733 (S.D. Tex. 2003) ................................................................... 8

*In re Hinsley*,
    201 F.3d 638 (5th Cir. 2000) ................................................................................ 8

*Lincoln Gen. Ins. Co. v. Reyna*,
    401 F.3d 347 (5th Cir. 2005) ................................................................................ 7

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ............................................................................ 6, 8

*Littlefield v. Forney Indep. Sch. Dist.*,
    268 F.3d 275 (5th Cir. 2001) ................................................................................ 7

*Love v. Nat'l Medical Enterprises*,
    230 F.3d 765 (5th Cir. 2000) ................................................................................ 8

*Lujan Nat'l Wildlife Fed'n*,
    497 U.S. 871, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990) ........................................ 8

*Malacara v. Garber*,
    353 F.3d 393 (5th Cir. 2003) ................................................................................ 9

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*,
    336 F.3d 410 (5th Cir. 2003) ............................................................................ 7, 8

*Rodriguez v. Casey International, Inc.*,
    2004 WL 5582173 (S.D. Fla. Sept. 15, 2004) .................................................... 13

*Samson v. Apollo Resources, Inc.*,
    242 F.3d 629 (5th Cir. 2001) ................................................................................ 1

*Skotak v. Tenneco Resins, Inc.*,
    953 F.2d 909 (5th Cir. 1992) ................................................................................ 7

*Solis v. Hooglands Nursery L.L.C.*,
    372 Fed. Appx. 528, 2010 WL 1404022 (5th Cir. Apr. 7, 2010) .................... 11, 13

*Tamez v. Manthey*,
    589 F.3d 764 (5th Cir. 2009) ................................................................................ 7

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) ................................................................................ 9

*United States v. Griffith*,
    522 F.3d 607 (5th Cir. 2008) ................................................................................ 9

*Weaver v. CCA Indus., Inc.*,
    529 F.3d 335 (5th Cir. 2008) ............................................................................ 6

*Winget v. Corporate Green, LLC*,
    No. Civ. A. 09-0229, 2010 WL 2985546 (M.D. La. July 26, 2010) ...................... 13

**STATUTES**

29 U.S.C. § 207(a) ............................................................................................ 1, 9

29 U.S.C. § 207(a)(1) ................................................................................ 1, 3, 9, 14

29 U.S.C. § 207(e)(1)-(8) ...................................................................................... 14

**RULES**

FED. R. CIV. P. 56(c) ............................................................................................ 6

FED. R. CIV. P. 56(e) ............................................................................................ 8

**REGULATIONS**

29 C.F.R. § 778.112 ................................................................................ 2, 10, 11, 13, 14

29 C.F.R. § 778.114(a) ......................................................................................... 15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO.  4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | § § | |
| Defendant. | § § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FOR A TIME AND ONE-HALF MULTIPLIER TO APPLY SHOULD BMSI BE FOUND LIABLE**

Plaintiffs Keith Coffin, Eric Jones, Josh Fox, Jose Rangel, Gregory Robinson, Jason Villarreal, Zachary Latiolais, Cody Duke, John C. Conine, Trustee for the Bankruptcy Estate of Freddie Andrew McLemore, Jr., Mason Fulkerson, and Dustin Akins ("Plaintiffs") file this Motion for Summary Judgment for a Time and One-Half Multiplier Should Blessey Marine Services, Inc. ("BMSI") be Found Liable, showing in support as follows:

**I.      SUMMARY**

As a general rule, overtime pay under the Fair Labor Standards Act ("FLSA") is calculated by multiplying the number of hours worked each workweek over 40 by <u>one and one-half</u> times the plaintiff's regular hourly rate of pay.  *See* 29 U.S.C. § 207(a)(1).  As the Fifth Circuit has stated, "[t]he Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (citing 29 U.S.C. § 207(a)); *see also Brumley v. Camin Cargo Control, Inc.*, Civil Action No. 08-1798 (JLL), 2010

WL 1644066, at *7 (D.N.J. Apr. 22, 2010) (referring to this method as the "default FLSA method").[1]

The FLSA provides for some exceptions to this general rule.  One exception applies when an employer pays its employee a "day rate" that complies with the Department of Labor ("DOL's") "day rate" regulation, 29 C.F.R. § 778.112.  When that is the case, then overtime pay is calculated by multiplying the total number of hours worked each workweek over 40 by <u>one-half</u> the plaintiff's regular hourly rate of pay, rather than one and one-half the plaintiff's regular hourly rate. *Id*.

In this case, it is undisputed that BMSI did not pay Plaintiffs any overtime.  But, BMSI self-titled their pay system a "day rate" system.[2]  So, BMSI apparently claims that, if it loses this case, it should only have to pay overtime damages using the "day rate" half-time method set out in the aforementioned "day rate" regulation, 29 C.F.R. § 778.112.   BMSI is wrong because, contrary to the requirements of the "day rate" regulation: (1) BMSI did not pay Plaintiffs a flat sum for a day's work or for doing a particular job, without regard to the number of hours they worked in the day or at the job; and (2) BMSI paid Plaintiffs other forms of compensation for their services in addition to the specific sum that it called the "day rate."  Both of these render the "day rate" regulation inapplicable under its plain terms and case law cited herein.

Because the "day rate" regulation does not apply, BMSI may not avail itself of the regulation's half-time overtime pay methodology.  Rather, overtime pay due to the Plaintiffs in this case must be calculated under the general rule, by multiplying the number of hours worked

---

[1]   A copy of *Brumley* is attached as Ex. 11.

[2]   BMSI's Motion for Summary Judgment, Docket Entry No. 45 at 6.

each workweek over 40 by one and one-half times the plaintiff's regular hourly rate of pay.  *See* 29 U.S.C. § 207(a)(1).

With that issue resolved, the sole remaining question that must be answered in order to determine how to calculate Plaintiffs' overtime damages in this case is: how to determine the Plaintiffs' regular hourly rate of pay, which would then be multiplied by time and one-half to determine the hourly overtime rate.  One approach would be to determine the Plaintiffs' regular hourly rate by dividing their total weekly earnings by 40, based on an assumed 40-hour workweek.  That approach would favor Plaintiffs.  Another approach would be to determine the regular hourly rate by dividing their total weekly earnings by the total number of hours actually worked each workweek.  That approach would always produce a lower regular hourly rate and, thus, a lower overtime rate.  That would favor BMSI.

Plaintiffs agree that, ultimately, in this particular case, the approach favoring BMSI applies.  Thus, "unpaid overtime compensation must be calculated based on a regular hourly rate with the number of actual hours worked in the denominator."  *Brantley v. Inspectorate America Corp.*, ___ F. Supp. 2d ___, ____, Civil Action No. H-09-2439, 2011 WL 5190122, at \*14 (S.D. Tex. Oct. 17, 2011) (Gilmore, J.) (underline added).[3]  But, critically, because the "day rate" regulation's half-time methodology does not apply, the overtime multiplier is still time and one-half the Plaintiffs' regular hourly rate, not half their regular rate, as would be the case if the "day rate" regulation applied.  *See* 29 U.S.C. § 207(a)(1).  A proposed order consistent with this methodology is filed contemporaneously with this motion.

---

[3]   A copy of *Brantley* is attached as Ex. 12.

II.     **UNDISPUTED FACTS RELEVANT TO THIS MOTION**

    A.     **Procedural Background**

On January 17, 2011, Coffin filed this FLSA collective action case for unpaid overtime on behalf of Tankermen employed by BMSI.[4]   At the hearing on Plaintiffs' motion for conditional certification on June 7, 2011, as a demonstration of Plaintiffs' reasonableness, Plaintiffs' counsel agreed on the record to a two-year statute of limitations to be applied in this case, rather than the maximum three-year statute of limitations that is available in cases of a willful violation of the FLSA.[5]

On July 28, 2011, the Court certified the case as a collective action.[6]   Plaintiff Coffin was the original Plaintiff, Plaintiff Jones joined the next day,[7] and the remaining nine Plaintiffs opted into the case after it was certified as a collective action.[8]   During the scheduling conference in this case on November 7, 2011, the Court encouraged the parties to file early dispositive motions on the proper method of calculating damages, should BMSI be found liable in this case.   On January 11 and 24, 2012, Plaintiffs counsel obtained (long) overdue discovery responses from BMSI that are relevant to that issue, and then promptly finalized and filed this motion.[9]

---

[4]   Docket Entry No. 1.

[5]   Transcript of June 7, 2011 Hearing on Conditional Certification, Docket Entry No. 53 at 50.

[6]   Docket Entry No. 56.

[7]   Docket Entry No. 2.

[8]   Docket Entry Nos. 63, 69-71, 74, 75, 78, and 88.

[9]   One of the items provided by Defendant this month was an expansive Excel Payroll Spreadsheet containing information regarding every check BMSI issued to each of the Plaintiffs in this case with the exception of Mason Fulkerson, whose information has not been provided because he only recently opted-in to the lawsuit.  In order to simplify things for the Court, Plaintiffs have taken the relevant excerpts from that spreadsheet and created Exhibit 10, which is attached and referenced herein.  All of the data in Exhibit 10 was correctly copied directly from Defendant's larger spreadsheet.

### B.    Factual Background

During the relevant limitations period, all of the Plaintiffs worked at least 84 hours per week during weeks they were on duty – that is how they were all scheduled.[10]  This translates to at least 44 hours of overtime work per workweek.  None of the Plaintiffs received any overtime pay under the FLSA.[11]  Rather, BMSI paid Plaintiffs, and its other Tankermen, what BMSI called a "day rate" of a specific sum for each day's work.[12]  However, that specific sum was reduced by 50% on workdays when the Plaintiffs traveled to or from their assigned vessel and their home cities.[13]

In addition to its self-designated "day rate" amount, BMSI also paid Plaintiffs the following additional forms of compensation for their services during the actionable two-year limitations period applicable to this case:

- Six of the Plaintiffs (Akins, Coffin, Fox, Robinson, Jones, and Rangel) received "Missing man pay" of $35.00 when a Tankerman had to perform extra work on his towboat because of a missing Tankerman (usually there are two Tankermen, so if one is missing, the other gets "missing man pay" because they have to cover the work that would normally be done by the missing Tankerman);[14]

- Five of the Plaintiffs (Akins, Coffin, Fox, Rangel, and Robinson) received "Tankerman incentive pay" a/k/a "barge pay" typically of $200.00 when extra work was necessary to load or unload a barge or the Tankerman volunteered to do so and work through their scheduled time off;[15]

---

[10]   Court's Ruling on Conditional Certification, Docket Entry No. 56 at 7 and footnote 9.

[11]   Court's Ruling on Conditional Certification, Docket Entry No. 56 at 7 and footnote 9.

[12]   BMSI's Motion for Summary Judgment, Docket Entry No. 45 at 6.

[13]   Coffin's Dep., Ex. 1 at 228-31; Rangel Aff., Ex. 2 at ¶ 19; Duke Aff., Ex. 3 at ¶ 20; Fox Aff., Ex. 4 at ¶ 18; Robinson Aff., Ex. 5 at ¶ 18; Villarreal Aff., Ex. 6 at ¶ 18; Akins Aff., Ex. 7 at ¶¶ 19; Coffin Aff., Ex. 8 at ¶ 18; Fulkerson Aff., Ex. 9 at ¶ 16; Latiolais Aff., Ex. 16 at ¶ 17.

[14]   Coffin Dep., Ex. 1 at 90-93, 109, 132; Rangel Aff., Ex. 2 at ¶¶ 7-10; Fox Aff., Ex. 4 at ¶¶ 9-11, 23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 22-23; Villarreal Aff., Ex. 6 at ¶¶ 8-9; Coffin Aff., Ex. 8 at ¶ 25; Payroll Spreadsheet, Ex. 10.

[15]   Coffin Dep., Ex. 1 at 93; Rangel Aff., Ex. 2 at ¶¶ 7-10; Duke Aff., Ex. 3 at ¶¶ 9-10; Fox Aff., Ex. 4 at ¶¶ 9-11, 23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 23; Akins Aff., Ex. 7 at ¶¶ 9-11; Coffin Aff., Ex. 8 at ¶¶ 21, 25; Payroll Spreadsheet, Ex. 10.

- Five of the Plaintiffs (Akins, Coffin, Fox, Rangel, and Robinson) received "Ride over pay" (designated as "ROP/Tanker" on paystubs after January 2011) of $100.00 a day when they worked on their scheduled days off, and another one (Latiolais) got "Ride over pay" of $50.00 a day for three days;[16]

- Nine of the Plaintiffs (Akins, Coffin, Fox, Duke, Jones, Rangel, Robinson, Villarreal, and Fulkerson) received an annual cash bonus pursuant to a bonus plan;[17] and

- Nine of the Plaintiffs (Akins, Coffin, Fox, Duke, Jones, Rangel, Robinson, Villarreal, and Fulkerson) received quarterly or semi-annual "safety bonuses" that were paid by giving them gift cards with values on them that they could use to purchase items from an on-line store, and which were reflected as compensation on their paystubs as "Bonus-Safety."[18]

## III.   ARGUMENT AND ANALYSIS

### A.   Legal Standard For Summary Judgment Motions

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23, 106 S. Ct. 2548; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

---

[16]   Fox Aff., Ex. 4 at ¶¶ 9-11; Akins Aff., Ex. 7 at ¶¶ 9-11; Robinson Aff., Ex. 5 at ¶¶ 9-11, 23; Latiolais Aff., Ex. 16 at ¶ 10 and Ex. 16-A; Payroll Spreadsheet, Ex. 10.

[17]   Coffin Dep., Ex. 1 at 275-76; Rangel Aff., Ex. 2 at ¶¶ 7-10; Duke Aff., Ex. 3 at ¶¶ 9, 11, 23; Fox Aff., Ex. 4 at ¶¶ 9-11, 21, 23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 21; Villarreal Aff., Ex. 6 at ¶¶ 8, 21; Akins Aff., Ex. 7 at ¶¶ 9-11, 24; Coffin Aff., Ex. 8 at ¶¶ 24; Fulkerson Aff., Ex. 9 at ¶ 19; Payroll Spreadsheet, Ex. 10.

[18]   Rangel Aff., Ex. 2 at ¶¶ 7-10; Duke Aff., Ex. 3 at ¶¶ 9, 11, 24; Fox Aff., Ex. 4 at ¶¶ 9-11, 22-23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 22; Villarreal Aff., Ex. 6 at ¶ 8, 22; Akins Aff., Ex. 7 at ¶¶ 9-11, 24; Coffin Aff., Ex. 8 at ¶ 26; Fulkerson Aff., Ex. 9 at ¶ 20; Payroll Spreadsheet, Ex. 10.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist*., 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co*., 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n. 13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts that show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage*, 336 F.3d at 412–413). The Court is not required to accept the non-movant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter–Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.") (citation omitted).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also de la O v. Hous'g Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("Judges are not like pigs, hunting for truffles buried in briefs.") (*quoting United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)).  Further, the Court has no obligation to raise and analyze a party's position in the absence of that party's meaningfully briefing the point. *Cf. United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("It is a well-worn principle that the failure to raise an issue on appeal constitutes waiver of that argument").

**B.    Argument And Analysis**

**1.    The General Rule Using The Time And One-Half Method For Calculating Overtime Pay Under The FLSA, And An Example Of Its Application**

As a general rule, overtime pay under the FLSA is calculated by multiplying the number of hours worked each workweek over 40 by one and one-half times the plaintiff's regular hourly rate of pay.  29 U.S.C. § 207(a)(1).  As the Fifth Circuit has stated:  "The Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week." *Samson*, 242 F.3d at 633 (citing 29 U.S.C. § 207(a)); *Donovan v. Grantham*, 690 F.2d 453, 458 (5th Cir. 1982) (same); *Brumley*, 2010 WL 1644066, at *7 (referring to this method as the "default FLSA method").

Thus, for example, under this general rule, an employee who worked 50 hours in a workweek, and was paid $500.00, would normally be entitled to an additional overtime payment

for that week of $187.50, derived as follows: $500 ÷ 40 hours = a $12.50 regular hourly rate ×

1.5 = an $18.75 overtime rate × 10 overtime hours = $187.50.

> **2.** **Legal Standards For Valid "Day Rate" Plans Under 29 C.F.R. § 778.112, Which Permit A Half-Time Method Of Calculating Overtime, And An Example Of Its Application**

An exception to this general rule applies when an employer pays its employee a "day

rate" that complies with the DOL's "day rate" regulation, 29 C.F.R. § 778.112.  29 C.F.R. §

778.112 explains both when the "day rate" regulation applies, as well as the way to calculate

overtime pay when it does apply:

> If the employee is paid a **flat sum** for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, **and if he receives no other form of compensation for services**, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked.  He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112 (bold added).

Thus, a valid "day rate" plan does not permit an employer to escape paying overtime

altogether.  Rather, it merely permits an employer to pay overtime using a "half-time"

methodology, rather than the normal time and one-half methodology.  *See* 29 C.F.R. § 778.112

("He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the

workweek").

For example, under the "day rate" exception, the same employee who worked 50 hours in

a workweek, and was paid $500.00, would be entitled to an additional overtime payment for that

week of $50.00, derived as follows: $500 ÷ 50 hours = a $10.00 regular hourly rate × .5 = a

$5.00 overtime rate × 10 overtime hours = $50.00.

3.     **BMSI's Self-Titled "Day Rate" Plan Did Not Comply With 29 C.F.R. § 778.112, So It Is Not A Valid "Day Rate" Plan**

In this case, BMSI's self-titled "day rate" pay plan did not comply with the "day rate" regulation, 29 C.F.R. § 778.112 for at least two basic reasons.

a.     <u>BMSI Did Not Comply With The "Day Rate" Regulation Because It Did Not Pay Plaintiffs A Flat Sum For A Day's Work For Doing A Particular Job, Without Regard To the Number Of Hours They Worked In The Day</u>

First, Defendant did not comply with 29 C.F.R. § 778.112 because, contrary to a requirement of 29 C.F.R. § 778.112, BMSI did not pay Plaintiffs a flat sum for a day's work or for doing a particular job, without regard to the number of hours they worked in the day or at the job. This is so because, on partial workdays associated with travel to or from the vessel and their homes, BMSI reduced all of the Plaintiffs' normal day rate by 50%.[19] This is inconsistent with the plain language of 29 C.F.R. § 778.112, and destroys the half-time overtime methodology permitted by that regulation. *See, e.g., Solis v. Hooglands Nursery L.L.C.*, 372 Fed. Appx. 528, 529, 2010 WL 1404022, at *1 (5th Cir. Apr. 7, 2010) (employer did not have a valid day rate plan under 29 C.F.R. § 778.112 where their employees' pay was reduced when they worked less than a full day).[20]

b.     <u>BMSI Did Not Comply With The "Day Rate" Regulation Because It Paid The Plaintiffs Numerous Other Forms Of Compensation For Their Services, In Addition To The "Day Rate"</u>

Second, BMSI did not comply with 29 C.F.R. § 778.112 because it paid Plaintiffs other forms of compensation for their services in addition to the specific sum that it called the "day rate." Specifically, as explained above, in Section II of this motion, BMSI paid Plaintiffs the

---

[19]   Coffin's Dep., Ex. 1 at 228-31; Rangel Aff., Ex. 2 at ¶ 19; Duke Aff., Ex. 3 at ¶ 20; Fox Aff., Ex. 4 at ¶ 18; Robinson Aff., Ex. 5 at ¶ 18; Villarreal Aff., Ex. 6 at ¶ 18; Akins Aff., Ex. 7 at ¶¶ 19; Coffin Aff., Ex. 8 at ¶ 18; Fulkerson Aff., Ex. 9 at ¶ 16; Latiolais Aff., Ex. 16 at ¶ 17.

[20]   A copy of *Hooglands Nursery L.L.C.* is attached as Ex. 13.

following additional forms of compensation for their services during the actionable two-year limitations period applicable to this case:

- Six of the Plaintiffs (Akins, Coffin, Fox, Robinson, Jones, and Rangel) received "Missing man pay" of $35.00 when a Tankerman had to perform extra work on his towboat because of a missing Tankerman (usually there are two Tankermen, so if one is missing, the other gets "missing man pay" because they have to cover the work that would normally be done by the missing Tankerman);[21]

- Five of the Plaintiffs (Akins, Coffin, Fox, Robinson, and Rangel) received "Tankerman incentive pay" a/k/a "barge pay" of $200.00 when extra work was necessary to load or unload a barge or the Tankerman volunteered to do so and work through their scheduled time off;[22]

- Five of the Plaintiffs (Akins, Coffin, Fox, Robinson, and Rangel) received "Ride over pay" (designated as "ROP/Tanker" on paystubs after January 2011) of $100.00 a day when they worked on their scheduled days off, and one (Latiolais) got "Ride over pay" of $50.00 a day for three days;[23]

- Nine of the Plaintiffs (Akins, Coffin, Duke, Jones, Rangel, Robinson, Villarreal, and Fulkerson) received an annual cash bonus pursuant to a bonus plan;[24] and

- Nine of the Plaintiffs (Akins, Coffin, Duke, Jones, Rangel, Robinson, Villarreal, and Fulkerson) received quarterly or semi-annual "safety bonuses" that were paid by giving them gift cards with values on them that they could use to purchase items from an on-line store, and which were reflected as compensation on their paystubs as "Bonus-Safety."[25]

---

[21] Coffin Dep., Ex. 1 at 90-93, 109, 132; Rangel Aff., Ex. 2 at ¶¶ 7-10; Fox Aff., Ex. 4 at ¶¶ 9-11, 23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 22-23; Villarreal Aff., Ex. 6 at ¶¶ 8-9; Coffin Aff., Ex. 8 at ¶ 25; Payroll Spreadsheet, Ex. 10.

[22] Coffin Dep., Ex. 1 at 93; Rangel Aff., Ex. 2 at ¶¶ 7-10; Duke Aff., Ex. 3 at ¶¶ 9-10; Fox Aff., Ex. 4 at ¶¶ 9-11, 23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 23; Akins Aff., Ex. 7 at ¶¶ 9-11; Coffin Aff., Ex. 8 at ¶¶ 21, 25; Payroll Spreadsheet, Ex. 10.

[23] Fox Aff., Ex. 4 at ¶¶ 9-11; Akins Aff., Ex. 7 at ¶¶ 9-11; Robinson Aff., Ex. 5 at ¶¶ 9-11, 23; Latiolais Aff., Ex. 16 at ¶ 10 and Ex. 16-A; Payroll Spreadsheet, Ex. 10.

[24] Coffin Dep., Ex. 1 at 275-76; Rangel Aff., Ex. 2 at ¶¶ 7-10; Duke Aff., Ex. 3 at ¶¶ 9, 11, 23; Fox Aff., Ex. 4 at ¶¶ 9-11, 21, 23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 21; Villarreal Aff., Ex. 6 at ¶¶ 8, 21; Akins Aff., Ex. 7 at ¶¶ 9-11, 24; Coffin Aff., Ex. 8 at ¶¶ 24; Fulkerson Aff., Ex. 9 at ¶ 19; Payroll Spreadsheet, Ex. 10.

[25] Rangel Aff., Ex. 2 at ¶¶ 7-10; Duke Aff., Ex. 3 at ¶¶ 9, 11, 24; Fox Aff., Ex. 4 at ¶¶ 9-11, 22-23; Robinson Aff., Ex. 5 at ¶¶ 9-11, 22; Villarreal Aff., Ex. 6 at ¶ 8, 22; Akins Aff., Ex. 7 at ¶¶ 9-11, 24; Coffin Aff., Ex. 8 at ¶ 26; Fulkerson Aff., Ex. 9 at ¶ 20; Payroll Spreadsheet, Ex. 10.

12

Any of these five other forms of compensation for Plaintiffs' services also renders 29 C.F.R. § 778.112 inapplicable based on its plain language.  *See also Rodriguez v. Casey International, Inc*., 2004 WL 5582173 at * 7-9 (S.D. Fla. Sept. 15, 2004) (denying employer's motion to base overtime pay on a half-time multiplier under 29 C.F.R. § 778.112 because it paid the plaintiffs other forms of compensation for their services in addition to the day rate);[26] *Winget v. Corporate Green, LLC*, No. Civ. A. 09-0229, 2010 WL 2985546, at *4 (M.D. La. July 26, 2010) ("Unlike the worker identified in § 778.112, it is undisputed that plaintiff received compensation not just for the particular jobs performed, but also for travel time and for the weekly meeting.  Thus, § 778.112 is inapplicable.").[27]

Note also that several of these forms of pay, including "Missing man pay," "Tankerman incentive pay" a/k/a "barge pay," and "Ride over pay," further demonstrate the point in Section III.B.3(a), above, that BMSI did not pay Plaintiffs a flat sum for a day's work or for doing a particular job, without regard to the number of hours they worked in the day or at the job.   This is so because BMSI paid these particular forms of additional pay to compensate the Plaintiffs for additional working time above their normal 12-hour workday.   As mentioned in Section III.B.3(a), paying fluctuating compensation depending on the number of hours worked by the employee further renders the "day rate" regulation inapplicable.  *Hooglands Nursery L.L.C.*, 372 Fed. Appx. at 529, 2010 WL 1404022, at *1.

---

[26]   A copy of *Rodriguez* is attached as Ex. 14.

[27]   A copy of *Winget* is attached as Ex. 15.

**4.      Because BMSI's Self-Titled "Day Rate" Plan Is Not A Valid "Day Rate" Plan Under 29 C.F.R. § 778.112, BMSI Is Not Entitled To Pay Overtime Due To Plaintiffs Using The Half-Time Methodology, But Instead Must Pay Plaintiffs Using The Normal Time And One-Half Methodology**

As shown above, for two separate and independent reasons, BMSI's "day rate" plan does not comply with the "day rate" regulation, 29 C.F.R. § 778.112.  As such, should BMSI be found liable in this case, it is not entitled to pay damages to the Plaintiffs using the half-time methodology provided for in 29 C.F.R. § 778.112.  Rather, should BMSI be found liable, overtime pay due to the Plaintiffs must be calculated under the FLSA's general rule, by multiplying the number of hours worked each work week over 40 by one and one-half times the plaintiff's regular hourly rate of pay.  *See* 29 U.S.C. § 207(a)(1).

The only remaining question is whether to derive the Plaintiff's regular hourly rate of pay to be used for calculating overtime by dividing their total weekly earnings[28] by 40, or by the total number of hours they actually worked each workweek.  As previously mentioned, Plaintiffs agree that, to determine the Plaintiffs' regular hourly rate of pay in this case, "unpaid overtime compensation must be calculated based on a regular hourly rate with the number of actual hours worked in the denominator."  *Brantley*, 2011 WL 5190122, at *14 (underline added).  That approach favors BMSI, because it always produces a lower regular hourly rate of pay than using a presumed 40-hour workweek as the denominator to determine the regular hourly rate.

But, critically, because the "day rate" regulation's half-time methodology does not apply, the overtime multiplier is still time and one-half the Plaintiffs' regular hourly rate, not half their regular rate, as would be the case if the "day rate" regulation applied. *See* 29 U.S.C. § 207(a)(1); *Brantley*, 2011 WL 5190122, at *12-14 (after reviewing Fifth Circuit law in the area, coming to

---

[28]   In performing this calculation, "all remuneration for employment paid to, or on behalf of, the employee" must be included in the employee's regular rate of pay, provided such remuneration does not fall within one of eight statutory exclusions listed under 29 U.S.C. § 207(e)(1)-(8).

same conclusion as to how overtime damages should be calculated in a legally identical situation).[29]   To conclude otherwise, and apply a half-time multiplier, would be to give BMSI the benefit of the very "day rate" regulation that it failed to comply with.  *See supra*.

Thus, for example, under the methodology Plaintiffs believe should apply, the same employee who worked 50 hours in a work week, and was paid $500.00, would be entitled to an additional overtime payment for that week of $150.00, derived as follows:  $500 ÷ 50 hours = a $10.00 regular hourly rate × 1.5 = a $15.00 overtime rate × 10 overtime hours = $150.00.[30]

## IV.   CONCLUSION

Plaintiffs Keith Coffin, Eric Jones, Josh Fox, Jose Rangel, Gregory Robinson, Jason Villarreal, Zachary Latiolais, Cody Duke, John C. Conine, Trustee for the Bankruptcy Estate of Freddie Andrew McLemore, Jr., Mason Fulkerson, and Dustin Akins respectfully pray that the Court grant their Motion for Summary Judgment for a Time and One-Half Multiplier to Apply Should Blessey Marine Services, Inc. be Found Liable, and for all other relief to which they are justly entitled.

---

[29]  In *Brantley* the employer implemented a Fluctuating Work Week pay system.  2011 WL 5190122, at *1-2.  The Fluctuating Work Week pay system is another exception to the FLSA's general rule that overtime pay is calculated by multiplying the number of hours worked each work week over 40 by one and one-half times the plaintiff's regular hourly rate of pay.  Specifically, just as with a valid "day rate" system, when a Fluctuating Work Week pay system is implemented consistent with its controlling regulation, 29 C.F.R. § 778.114(a), the system permits the employer to calculate overtime using a half-time method, rather then the FLSA general rule requiring time and one-half.  *Brantley*, 2011 WL 5190122, at *6-7.  But, in *Brantley*, the employer violated the regulation when it implemented its Fluctuating Work Week pay system.  *Id*. at *12.  As a result, the Fluctuating Work Week's half-time method of calculating overtime pay had to give way to the general FLSA rule of time and one-half the regular hourly rate applied to calculating overtime damages.  *Id*.  Precisely as in this case, the remaining question in *Brantley* was whether to determine the plaintiffs' regular hourly rate to be used for calculating time and one-half overtime by dividing their total weekly earnings by 40, based on an assumed 40 hour work week, or by dividing their total weekly earnings by the total number of hours they actually worked each week. *Id*. at *12-14.  After surveying Fifth Circuit case law relating to this issue, the Court concluded that the regular hourly rate would be determined by dividing the plaintiffs' total weekly pay by the total number of hours actually worked each week, not 40.   *Id*. at *14.  This is exactly the same result Plaintiffs seek in this motion.

[30]  There is a tenable argument for dividing the Plaintiffs' weekly earnings by 40 to determine the regular hourly rate, rather than the number of hours actually worked.  However, because Plaintiffs do not urge that result in this particular case, they will not waste the Court's valuable time with that argument.

15

Respectfully submitted,

OBERTI SULLIVAN LLP

By:    s/ Mark J. Oberti
       Mark J. Oberti
       Texas Bar No. 00789951
       Southern District ID. No. 17918
       723 Main Street, Suite 340
       Houston, Texas 77002
       (713) 401-3555 – Telephone
       (713) 401-3547 – Facsimile
       mark@osattorneys.com – Email

       ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
Southern District ID No. 24524
Marilynne Gorham
State Bar No. 00790780
Southern District ID No. 19331
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email
mgorham@osattorneys.com – Email

ATTORNEYS FOR PLAINTIFFS

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served to all counsel of record, as listed below, by CM/ECF on this the 27th day of January 2012.

Steven F. Griffith, Jr.
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170

Thomas J. "Beau" Bethune IV
General Counsel
Blessey Marine Services, Inc.
1515 River Oaks Rd. E.
Harahan, Louisiana 70123

Shelia Ashabranner
Case Manager to Judge Nancy F. Atlas
Email: *shelia_ashabranner@txs.uscourts.gov*

s/ Mark J. Oberti
Mark J. Oberti

17

## INDEX OF EXHIBITS

These exhibits are incorporated into the preceding motion as if set out verbatim:

| DESCRIPTION | EXHIBIT |
|---|---|
| Keith Coffin Deposition Excerpts (note:  he is the only Plaintiff who has been deposed thus far) | 1 |
| Jose Rangel Affidavit | 2 |
| Cody Duke Affidavit | 3 |
| Josh Fox Affidavit | 4 |
| Gregory Robinson Affidavit | 5 |
| Jason Villarreal Affidavit | 6 |
| Dustin Akins Affidavit | 7 |
| Keith Coffin Affidavit | 8 |
| Mason Fulkerson Affidavit | 9 |
| Excerpts from Defendant's Payroll Spreadsheet | 10 |
| *Brumley v. Camin Cargo Control, Inc.*, Civil Action No. 08-1798 (JLL), 2010 WL 1644066, at *7 (D.N.J. Apr. 22, 2010) | 11 |
| *Brantley v. Inspectorate America Corp.*, ___ F. Supp. 2d ___, Civil Action No. H-09-2439, 2011 WL 5190122 (S.D. Tex. Oct. 17, 2011) | 12 |
| *Solis v. Hooglands Nursery L.L.C.*, 372 Fed. Appx. 528, 2010 WL 1404022 (5th Cir. Apr. 7, 2010) | 13 |
| *Rodriguez v. Casey International, Inc.*, 2004 WL 5582173 (S.D. Fla. Sept. 15, 2004) | 14 |
| *Winget v. Corporate Green, LLC*, No. Civ. A. 09-0229, 2010 WL 2985546 (M.D. La. July 26, 2010) | 15 |
| Zachary Latiolais Affidavit | 16 |