IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | § § | |
| Defendant. | § § | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO THEIR MOTION
FOR SUMMARY JUDGMENT FOR A TIME AND ONE-HALF MULTIPLIER
TO APPLY SHOULD BMSI BE FOUND LIABLE**

Mark J. Oberti
Texas Bar No. 00789951
Southern District ID. No. 17918
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – Email
ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
Southern District ID No. 24524
Marilynne Gorham
State Bar No. 00790780
Southern District ID No. 19331
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email
mgorham@osattorneys.com – Email
ATTORNEYS FOR PLAINTIFF

**TABLE OF CONTENTS**

I. SUMMARY ................................................................................................................. 1

II. ANALYSIS ................................................................................................................. 2

    A. BMSI Did Not Comply With The "Day Rate" Regulation ...................................... 2

        1. BMSI Did Not Comply With The "Day Rate" Regulation Because It Did Not Pay Plaintiffs A Flat Sum For A Day's Work, Without Regard To the Number Of Hours They Worked In The Day ..................... 2

        2. BMSI Did Not Comply With The "Day Rate" Regulation Because It Paid The Plaintiffs Numerous Other Forms Of Compensation For Their Services, In Addition To The "Day Rate" .................................. 4

    B. Because BMSI Did Not Comply With The "Day Rate" Regulation, It Is Not Entitled To Pay Overtime Due To Plaintiffs Using The Half-Time Methodology – BMSI's Reliance On Fluctuating Workweek Cases And Its Other Arguments Notwithstanding ................................................................. 5

        1. BMSI's FWW Gambit Fails ....................................................................... 5

            a. FWW Cannot Apply To This Case ................................................. 6

            b. Even If FWW Could Apply To This Case, BMSI Cannot Rely On It Because It Failed To Comply With Its Requirements Too ................................................................................ 6

            c. BMSI's Analogy To FWW Cases Actually Results In Application Of A Time And One-Half (1.5) Damages Methodology In This Case ............................................................. 7

        2. *Hooglands Nursery*, *Rodriguez*, and *Brantley* Do Not Support BMSI's Position ....................................................................................... 8

        3. BMSI's Equitable Argument Is Disingenuous ........................................... 9

    C. Any Ambiguity About The Correct Damages Methodology Should Be Resolved In Plaintiffs' Favor ................................................................................ 9

III. CONCLUSION ........................................................................................................ 10

CERTIFICATE OF SERVICE ....................................................................................... 11

INDEX OF EXHIBITS .................................................................................................. 12

# **TABLE OF AUTHORITIES**

**CASES**

*Adeva v. Intertek USA, Inc.*,
   No. 09–1096(SRC), 2010 WL 97991 (D.N.J. Jan. 11, 2010) ..................................................... 7

*Allen v. McWane, Inc.*,
   593 F.3d 449 (5th Cir. 2010) ..................................................................................................... 9

*Ayers v. SGS Control Servs., Inc.*,
   No. 03 Civ. 9077 RMB, 2007 WL 646326 (S.D.N.Y. Feb. 27, 2007) ...................................... 7

*Ayers v. SGS Control Servs., Inc.*,
   No. 03- 9078, 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) ........................................................ 8

*Brantley v. Inspectorate America Corp.*,
   ___ F. Supp. 2d ___, ____, Civil Action No. H-09-2439,
   2011 WL 5190122 (S.D. Tex. Oct. 17, 2011) ................................................................. 2, 7, 8, 9

*Brumley v. Camin Cargo Control, Inc.*,
   No. 08–1798(JLL), 2010 WL 1644066 (D.N.J. Apr. 22, 2010) ................................................. 7

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
   630 F.3d 351 (4th Cir. 2011) ..................................................................................................... 6

*Gagnon v. United Technisource, Inc.*,
   607 F.3d 1036 (5th Cir. 2010) ................................................................................................... 5

*Kaiser v. At The Beach, Inc.*,
   NO. 08-CV-586-TCK-FHM, 2011 WL 6826577 (N.D. Okla. Dec. 28, 2011) ......................... 7

*Price v. Marathon Cheese Corp.*,
   119 F.3d 330 (5th Cir. 1997) ..................................................................................................... 3

*Ransom v. M. Patel Enters., Inc.*,
   __ F. Supp. 2d __, NO. A-10-CA-857 AWA,
   2011 WL 5239229 (W.D. Tex. Nov 1, 2011) ......................................................................... 6, 9

*Rodriguez v. Casey International, Inc.*,
   2004 WL 5582173 (S.D. Fla. Sept. 15, 2004) ......................................................................... 4, 8

*Solis v. Hooglands Nursery L.L.C.*,
   No. 07-0533, 2008 U.S. Dist. LEXIS 46409 (W.D. La. June 13, 2008) ................................. 3, 8

*Urnikis–Negro v. Am. Family Prop. Servs.*,
   616 F.3d 665 (7th Cir. 2010) ................................................................................................ 5

*Winget v. Corporate Green, LLC*,
   No. Civ. A. 09-0229, 2010 WL 2985546 (M.D. La. July 26, 2010) .......................................... 4

**STATUTES**

29 U.S.C. § 207(a)(1) ................................................................................................................ 2

**REGULATIONS**

29 C.F.R. § 778.112 ..................................................................................................... 1, 2, 3, 4

29 C.F.R. § 778.114(a) .............................................................................................................. 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | § § § | |
| Defendant. | § | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO THEIR MOTION FOR SUMMARY JUDGMENT FOR A TIME AND ONE-HALF MULTIPLIER TO APPLY SHOULD BMSI BE FOUND LIABLE**

**I.   SUMMARY**

BMSI claims it had a "day rate" pay plan.[1]  The FLSA's "day rate" regulation – when complied with – permits employers to pay overtime using a half-time (.5) methodology.  29 C.F.R. § 778.112.  But, contrary to its claims, BMSI's self-titled "day rate" pay plan did not comply with the "day rate" regulation.[2]  BMSI claims that does not matter.[3]  It insists that because this is a "misclassification" case, rather than an "off the clock" case, overtime pay due the Plaintiffs must be calculated using the half-time (.5) methodology anyway.[4]  As explained herein, BMSI is wrong.  Because BMSI failed to comply with the "day rate" regulation, the overtime multiplier in this case is time and one-half (1.5) the Plaintiffs' regular hourly rate, not half their regular rate, as would be the case if the "day rate" regulation applied.  *See* 29 U.S.C. §

---

[1]   Voss Aff., Ex. 2 to BMSI's Response at ¶¶ 4, 6.

[2]   Plaintiffs' Motion at 11-13.

[3]   BMSI's Response at 14.

[4]   BMSI's Response at 8-14.

207(a)(1); *Brantley v. Inspectorate America Corp.*, ___ F. Supp. 2d ___, ____, Civil Action No. H-09-2439, 2011 WL 5190122, at *12, 14 (S.D. Tex. Oct. 17, 2011) (reaching same conclusion in a legally similar case and stating that, "Defendant does not dispute that if the FWW does not apply, the overtime hourly rate should equal 1.5 times the regular hourly rate.").

## II.  ANALYSIS

### A.  BMSI Did Not Comply With The "Day Rate" Regulation

BMSI's self-titled "day rate" pay plan[5] did not comply with the "day rate" regulation, 29 C.F.R. § 778.112 for two basic reasons: (1) BMSI did not pay Plaintiffs a flat sum for a day's work without regard to the number of hours they worked in the day; and (2) BMSI paid Plaintiffs other forms of compensation for their services in addition to the specific sum that it called the "day rate." BMSI's arguments to the contrary fail.

#### 1.  BMSI Did Not Comply With The "Day Rate" Regulation Because It Did Not Pay Plaintiffs A Flat Sum For A Day's Work, Without Regard To the Number Of Hours They Worked In The Day

To qualify for the "day rate" regulation's half-time methodology an employee must be paid a "flat sum" without regard to the number of hours worked in the day. 29 C.F.R. § 778.112. But here, BMSI admittedly reduced all of the Plaintiffs' normal day rates by 50% on travel days.[6] BMSI admits that travel days are typically not full workdays on the vessels.[7] It therefore follows that BMSI reduced the Plaintiffs' flat rate by 50% based on the number of hours worked on travel days. This destroys the half-time overtime methodology permitted by the "day rate" regulation under its plain language.

---

[5]  Voss Aff., Ex. 2 to BMSI's Response at ¶¶ 4, 6.

[6]  Voss Aff., Ex. 2 to BMSI's Response at ¶¶ 7-8.

[7]  Voss Aff., Ex. 2 to BMSI's Response at ¶¶ 7-8.

BMSI offers two arguments to try to get around this problem. First, BMSI argues that an employer may utilize more than one "day rate," and here it had two: one for normal workdays, and one for travel days.[8] But, until now, BMSI never explained it this way to the Tankermen. To them, it was always just a 50% reduction in their day rate on travel days.[9] BMSI's post-litigation recharacterization has "all the hallmarks of a *post-hoc* attempt to make a silk purse out of a sow's ear." *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir. 1997).

Second, BMSI argues that because the Tankerman were not paid on a purely hourly basis, it did not violate the "day rate" regulation.[10] It is true that paying an employee on a purely hourly basis is incompatible with the "day rate" regulation. *See, e.g., Solis v. Hooglands Nursery L.L.C.*, No. 07-0533, 2008 U.S. Dist. LEXIS 46409, at *4, *11-12 (W.D. La. June 13, 2008) (employer did not have a valid day rate plan under 29 C.F.R. § 778.112 where it paid its employees on an hourly basis). But, contrary to BMSI's implication, a purely hourly pay plan is not the only pay system that does not fit within the "day rate" regulation. Rather, by the regulation's plain language, any pay plan that reduces the "flat sum" an employee is paid based on the number of hours worked in a day violates the "day rate" regulation, even if the employee is not paid on a purely hourly basis. 29 C.F.R. § 778.112. Here, BMSI's pay plan cut the Plaintiffs' "day rate" by 50% on travel days, which even BMSI admits are days in which they performed fewer hours of work on BMSI's vessels than normal.[11] As such, BMSI's pay plan does not fit within the "day rate" regulation.

---

[8] BMSI's Response at 15.

[9] Coffin's Dep., Ex. 1 at 228-31; Rangel Aff., Ex. 2 at ¶ 19; Duke Aff., Ex. 3 at ¶ 20; Fox Aff., Ex. 4 at ¶ 18; Robinson Aff., Ex. 5 at ¶ 18; Villarreal Aff., Ex. 6 at ¶ 18; Akins Aff., Ex. 7 at ¶¶ 19; Coffin Aff., Ex. 8 at ¶ 18; Fulkerson Aff., Ex. 9 at ¶ 16; Latiolais Aff., Ex. 16 at ¶ 17.

[10] BMSI's Response at 16.

[11] Voss Aff., Ex. 2 to BMSI's Response at ¶¶ 7-8.

> 2. **BMSI Did Not Comply With The "Day Rate" Regulation Because It Paid The Plaintiffs Numerous Other Forms Of Compensation For Their Services, In Addition To The "Day Rate"**

To qualify for the "day rate" regulation's half-time methodology an employee may not be paid other forms of compensation for their services in addition to the "day rate." 29 C.F.R. § 778.112. Here, by BMSI's own admission, it paid the Plaintiffs extra compensation for their services, such as when they performed more work than normally required that qualified for "Missing Man Pay," "Barge Pay," or "Ride-Over Pay."[12] As a result, the "day rate" regulation does not apply. *See Winget v. Corporate Green, LLC*, No. Civ. A. 09-0229, 2010 WL 2985546, at *4 (M.D. La. July 26, 2010).

BMSI again makes two arguments in an attempt to avoid this problem. First, BMSI claims that the regulation permits additional compensation components for services, so long as the extra compensation is not based on hours worked.[13] But that is not what the regulation says. And, even if that were so, it would not help BMSI, because the only case BMSI cites for that proposition provides that the "day rate" regulation would not apply if the employee was "given some other form of compensation separate and apart from the job rate."[14] Here, the Plaintiffs were given other forms of compensation separate and apart from the "day rate."[15] As such, BMSI's argument fails under the very analysis it proposes.

Second, BMSI notes that some forms of pay to the Plaintiffs are not even "compensation" that can be included in the numerator of the regular rate calculation.[16] While this is true, it is

---

[12] Voss Aff., Ex. 2 to BMSI's Response at ¶¶ 9-12; *see also* Plaintiffs' Motion at 12.

[13] BMSI's Response at 18.

[14] BMSI's Response at 17 (quoting *Rodriguez v. Casey International, Inc.*, 2004 WL 5582173 at * 7 (S.D. Fla. Sept. 15, 2004)).

[15] Plaintiffs' Motion at 12.

[16] BMSI's Response at 18.

4

irrelevant, because the forms of pay BMSI identified in this part of its response – per diem and holiday pay – were not even relied on by Plaintiffs as the types of extra compensation that are incompatible with the "day rate."[17]

> **B. Because BMSI Did Not Comply With The "Day Rate" Regulation, It Is Not Entitled To Pay Overtime Due To Plaintiffs Using The Half-Time Methodology – BMSI's Reliance On Fluctuating Workweek Cases And Its Other Arguments Notwithstanding**
>
> **1. BMSI's FWW Gambit Fails**

BMSI argues that even if it did not comply with the "day rate" regulation, it does not matter: damages should be calculated just as if it had.[18] BMSI's rationale for this counterintuitive position is based on a broad – and demonstrably inaccurate – claim that damages in all FLSA "misclassification" cases "without exception" are calculated using a half-time (.5) multiplier, and that a time and one-half (1.5) multiplier is reserved only for "off the clock" cases.[19] In making this broad assertion, BMSI relies entirely on Fluctuating Workweek ("FWW") cases holding that, where the employee was paid a fixed salary regardless of how many hours they worked in a workweek, the employee has already been paid for all hours worked in each workweek, so overtime damages are calculated using a half-time (.5) multiplier.[20] *See, e.g., Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th

---

[17] Plaintiffs' Motion at 12. While it is irrelevant to this motion, it is worth noting that simply labeling a payment a "per diem" – as BMSI does with its Tankermen – does not alone make it excludable from the regular rate. *See, e.g., Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041-42 (5th Cir. 2010) (employer that artificially designated portion of employee's wages as "straight time," and portion as "per diem" allowance that was not reasonably approximate to his actual expenses, violated FLSA by not including employee's per diem in its calculation of his "regular rate" of pay). It is difficult to see how the payment BMSI labels "per diem" could be a valid per diem when, as they testified in their affidavits, the Tankermen do not even spend their own money on food or lodging. Instead, it appears BMSI labeled the payments a "per diem" as part of a tax reduction strategy.

[18] BMSI's Response at 14.

[19] BMSI's Response at 8.

[20] BMSI's Response at 8-11, 13-14. Plaintiffs also rely heavily on *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010), which applied a FWW methodology more broadly than any other circuit court has. That case is not the law in the Fifth Circuit, and has been criticized by a court with the Fifth Circuit. *See Ransom*

Cir. 2011). This model, which is often are referred to as the FWW methodology, does not support BMSI's position in this case. To the contrary, it supports Plaintiffs' position.

      a.    <u>FWW Cannot Apply To This Case</u>

First, neither the FWW regulation, 29 C.F.R. § 778.114(a), nor the FWW cases BMSI relies on, apply the FWW half-time (.5) methodology outside of the situation where the employee received a fixed salary for all hours worked in a workweek, now matter how few or how many. Here, it is undisputed that the Plaintiffs did not receive a fixed salary for all hours worked in a workweek, no matter how few or how many. Rather, they received a "day rate" that was reduced on travel days, and also received additional compensation when they performed other services. On days during the week that they did not work, they received no pay at all. So, while stated in terms of a "day rate," it is obvious that the amount of Plaintiffs' pay was directly related to the number of hours they worked; they did not receive a "fixed salary" for all hours worked, no matter how many or how few in a workweek. The FWW cases BMSI relies on do not even purport to apply to this situation. Neither does the FWW regulation, 29 C.F.R. § 778.114(a).

      b.    <u>Even If FWW Could Apply To This Case, BMSI Cannot Rely On It Because It Failed To Comply With Its Requirements Too</u>

Second, even if BMSI were right to apply FWW cases to this case by analogy, the result would not be a half-time (.5) damages methodology. This is so because one of the requirements of the FWW is that the employee must receive a "fixed" salary, no matter how many or how few hours he works in a given workweek. 29 C.F.R. § 778.114(a)(2). Here, again, Plaintiffs did not receive a weekly salary, no matter how many or how few hours they worked each workweek. In

---

*v. M. Patel Enters., Inc.*, __ F. Supp. 2d __, NO. A-10-CA-857 AWA, 2011 WL 5239229, at *5 (W.D. Tex. Nov 1, 2011). A copy of *Ransom* is attached hereto as Exhibit 1.

fact, they did not receive a salary at all – the were only paid on days they worked – which means the more days/hours they worked, the more money they made. Even Plaintiffs' daily pay was not "fixed" or a "flat sum" because it was subject both to reduction on travel days, as well as increases for a host of reasons, both of which are incompatible with the FWW methodology, not to mention the "day rate" regulation. *Brantley*, 2011 WL 5190122, at *7-11 (employer could not use FWW method of overtime calculation because the salary it paid the plaintiffs was not "fixed" in that it was subject to both downward and upward adjustments).

    c. <u>BMSI's Analogy To FWW Cases Actually Results In Application Of A Time And One-Half (1.5) Damages Methodology In This Case</u>

Ultimately, this case is analogous to a misclassification case where the employer argues for a FWW half-time (.5) methodology, but fails because it did not comply with the requirements of FWW for one reason or another. Contrary to BMSI's bold claim that damages in "misclassification" cases are "without exception" based on half-time (.5) methodology, that happens all the time in "misclassification" cases. *See, e.g.*, *Kaiser v. At The Beach, Inc.*, NO. 08-CV-586-TCK-FHM, 2011 WL 6826577 (N.D. Okla. Dec. 28, 2011) (refusing to apply FWW half-time (.5) methodology in misclassification case because requirements of FWW were not fulfilled) (copy attached as Exhibit 2); *Brantley*, 2011 WL 5190122, at *7-12 (recognizing that FWW half-time (.5) methodology did not apply in that particular misclassification case because employer failed to comply with the requirements of FWW); *Brumley v. Camin Cargo Control, Inc.*, No. 08–1798(JLL), 2010 WL 1644066 *6–7 (D.N.J. Apr. 22, 2010) (same); *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077 RMB, 2007 WL 646326 *9–10 (S.D.N.Y. Feb. 27, 2007) (same) (copy attached as Exhibit 3); *Adeva v. Intertek USA, Inc.*, No. 09–1096(SRC), 2010 WL 97991 (D.N.J. Jan. 11, 2010) (same) (copy attached as Exhibit 4). That is the correct analogy here because BMSI has argued for a "day rate" half-time (.5) methodology, but failed to comply

7

with the requirements of a valid "day rate" plan under the regulation. *See supra*, § II.A. In that situation, the employer in *Brantley* conceded that "the overtime hourly rate should equal 1.5 times the regular hourly rate." *Brantley*, 2011 WL 5190122, at *12. The *Brantley* court then concluded that the hourly rate (to multiply by 1.5) should be derived by dividing the plaintiffs' total pay each workweek by the number of hours they worked each workweek. *Id*. at *14. That is the same result Plaintiffs seek here – and it is frankly a more favorable result than other courts have given to employers in similar cases.[21]

### 2. *Hooglands Nursery*, *Rodriguez*, and *Brantley* Do Not Support BMSI's Position

BMSI also argues that *Hooglands Nursery*, *Rodriguez*, and *Brantley* support its position, that it may utilize the half-time (.5) damages methodology even though it did not comply with the "day rate" regulation.[22] BMSI is wrong again.

In *Hooglands Nursery*, the employer paid its employees on an hourly basis, with straight-time overtime pay. 2008 U.S. Dist. LEXIS 46409, at *3-4. Obviously then, when the employer was found liable for not paying overtime, the proper damages were based on a half-time (.5) methodology, to make up for the lost "half-time." *Id*. at *12. *Hooglands Nursery's* damages methodology is inapplicable here, because the Plaintiffs were not paid on an hourly basis, with straight-time overtime pay. *Rodriguez* dealt with "job rates" in a different factual and legal context. Finally, as previously described, *Brantley* applied essentially the same damages methodology that Plaintiffs urge here: determination of the "regular rate" by dividing all weekly

---

[21] Some courts hold that when FWW does not apply to a "misclassification" case, the general default rule for overtime pay under the FLSA applies, which is a time and one-half (1.5) the regular rate methodology. *See Ayers v. SGS Control Servs., Inc.*, No. 03- 9078, 2007 WL 3171342, at *1-3 (S.D.N.Y. Oct. 9, 2007) ("Ayers II") (copy attached as Exhibit 5). For example, in *Ayers II*, the Court found that because the defendant had violated the fixed salary requirement of the FWW method, it could not have damages calculated under the FWW method. *Id*. at *2. The Court held that the proper measure of damages was the default FSLA method: "time-and-a-half for all hours over 40." *Id*. at *3.

[22] BMSI's Response at 11-13.

pay by the number of hours worked in a workweek, and then determination of damages owed by applying a time and one-half (1.5) multiplier. *Brantley*, 2011 WL 5190122, at *12 ("Defendant does not dispute that if the FWW does not apply, the overtime hourly rate should equal 1.5 times the regular hourly rate.").

### 3. BMSI's Equitable Argument Is Disingenuous

Finally, BMSI tries to convince the Court that calculating damages as Plaintiffs urge would result in the Tankermen being paid equal to or more than Pilots, Relief Captains, and Captains who supervise them, and thus "remove the incentive of additional compensation for being promoted into a superior position on the vessel."[23] This stands in contrast to what BMSI told its Tankermen when it was trying to convince them not to join this lawsuit. At that time, BMSI told them that, no matter what, "your future pay will not change much, if at all, based on the lawsuit."[24]

### C. Any Ambiguity About The Correct Damages Methodology Should Be Resolved In Plaintiffs' Favor

In sum, BMSI's broad conceptual approach to how it believes damages should be calculated fails in light of the specific requirements of the "day rate" regulation. Contrary to BMSI's arguments, it is not illogical or even unusual that a broad conceptual theory such as BMSI's must give way to the specific requirements of the FLSA – requirements that it did not comply with. *See supra*. Even if there were ambiguity about the correct damages methodology in this case, it should be resolved in Plaintiffs' favor. As the court recently stated in *Ransom*, 2011 WL 5239229, at *9, "[w]hen a court has reached the question of damages, the equities are no longer equal: the employer illegally underpaid its employee. And courts are directed to

---

[23] BMSI's Response at 6.

[24] Letter from Griffith that was sent to All Current BMSI Tankermen of 08/09/11, Exhibit. 6.

9

interpret the FLSA broadly in favor of employees." (citing *Allen v. McWane, Inc.*, 593 F.3d 449, 452 (5th Cir. 2010)). This especially makes sense here, where BMSI's proposed damaged model would permit it to use a "day rate" system that violates the FLSA's "day rate" regulation, yet have damages calculated in the same exact fashion that the regulation reserves for valid "day rate" plans. That would render the "day rate" regulation a legal nullity with no effect, and result in an undeserved windfall to BMSI.

### III.  CONCLUSION

Plaintiffs respectfully pray that the Court grant their Motion for Summary Judgment for a Time and One-Half Multiplier to Apply Should Blessey Marine Services, Inc. Be Found Liable, and for all other relief to which they are justly entitled.

Respectfully submitted,

OBERTI SULLIVAN LLP

By:  s/ Mark J. Oberti
Mark J. Oberti
Texas Bar No. 00789951
Southern District ID. No. 17918
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
mark@osattorneys.com – Email

ATTORNEY-IN-CHARGE FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument was served to all counsel of record, as listed below, by CM/ECF on this the 12th day of March 2012.

Steven F. Griffith, Jr.
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170

Thomas J. "Beau" Bethune IV
General Counsel
Blessey Marine Services, Inc.
1515 River Oaks Rd. E.
Harahan, Louisiana 70123

Shelia Ashabranner
Case Manager to Judge Nancy F. Atlas
Email: *shelia_ashabranner@txs.uscourts.gov*

                                          s/ Mark J. Oberti
                                          Mark J. Oberti

## INDEX OF EXHIBITS

These exhibits are incorporated into the preceding motion as if set out verbatim:

| DESCRIPTION | EXHIBIT |
|---|---|
| *Ransom v. M. Patel Enters., Inc.*, __ F. Supp. 2d __, NO. A-10-CA-857 AWA, 2011 WL 5239229 (W.D. Tex. Nov 1, 2011) | 1 |
| *Kaiser v. At The Beach, Inc.*, NO. 08-CV-586-TCK-FHM, 2011 WL 6826577 (N.D. Okla. Dec. 28, 2011) | 2 |
| *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077 RMB, 2007 WL 646326 (S.D.N.Y. Feb. 27, 2007) | 3 |
| *Adeva v. Intertek USA, Inc.*, No. 09–1096(SRC), 2010 WL 97991 (D.N.J. Jan. 11, 2010) | 4 |
| *Ayers v. SGS Control Servs., Inc.*, No. 03- 9078, 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) | 5 |
| Letter from Mr. Griffith that was sent to All Current BMSI Tankermen of 08/09/11 | 6 |