IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH COFFIN, on behalf of himself and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO.  4:11-cv-00214 |
| BLESSEY MARINE SERVICES, INC., | § § | |
| Defendant. | § § § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' SEAMAN STATUS UNDER THE FLSA, AND PLAINTIFFS' MOTION TO STRIKE TOM MCWHORTER'S EXPERT REPORT

Mark J. Oberti
Texas Bar No. 00789951
Southern District ID. No. 17918
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
Southern District ID No. 24524
Marilynne Gorham
State Bar No. 00790780
Southern District ID No. 19331
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile

# TABLE OF CONTENTS

I.    SUMMARY ............................................................................................................ 1

II.   FACTUAL BACKGROUND .................................................................................. 3

      A.    Tankermen's Duties Of Loading And Unloading Barges Are Non-
            Seaman's Work Under The FLSA ............................................................... 4

            1.    The Essential Nature Of The Tankerman Position Is To Load And
                  Unload Barges ................................................................................... 4

            2.    Loading And Unloading Barges *Per Se* Are Non-Seaman's Work ............ 4

      B.    Tankermen's Work That Is Closely Related To Loading And Unloading
            Barges Is Also Non-Seaman's Work Under The FLSA ................................. 5

      C.    Tankermen's Work That Aids In The Towboats And Barges' Operation
            As A Means Of Transportation Is Seaman's Work Under The FLSA .................. 9

III.  ARGUMENT AND ANALYSIS ............................................................................ 10

      A.    Legal Overview:   A Vessel-Based Employee Who Spends More Than
            20% Of His Working Time Performing Non-Seaman's Work – Which
            Includes "Loading And Unloading And Activities Relative Thereto" – Is
            Not An Exempt Seaman Under The FLSA .................................................. 10

            1.    A Vessel-Based Employee Who Spends More Than 20% Of His
                  Working Time Performing Non-Seaman's Work Is Not An Exempt
                  Seaman Under The FLSA .................................................................. 10

            2.    "Loading And Unloading And Activities Relative Thereto" Are
                  Non-Seaman's Work, So A Vessel-Based Employee Who Spends
                  More Than 20% Of His Working Time Performing Such Work Is
                  Not An FLSA-Exempt Seaman ........................................................... 13

                  a.    Loading And Unloading Barges *Per Se* Are Non-Seaman's
                        Work Under *Owens* .............................................................. 13

                  b.    "Activities Relative" To Loading And Unloading Barges
                        Are Non-Seaman's Work – Including The Tankermen's
                        Standby Or Waiting Time On Dock ........................................ 16

      B.    Analysis:  Plaintiffs Are Not FLSA-Exempt Seaman As A Matter Of Law
            Because A Reasonable Jury Could Easily Conclude That They Spent More
            Than 20% Of Their Working Time Performing Non-Seaman's Work –
            Specifically, "Loading And Unloading And Activities Relative Thereto" .......... 20

1. First, BMSI's Motion Fails To Carry Its Burden To Prove As A Matter Of Law That Plaintiffs Did Not Spend More Than 20% Of Their Working Time Performing Non-Seaman's Work .......................... 20

2. Second, BMSI's Failure To Carry Its Burden Of Proof Aside, A Legally Correct Analysis Of The Captains Logs Also Establishes A Fact Issue On Whether Plaintiffs Spent More Than 20% Of Their Working Time Performing Non-Seaman's Work .......................... 21

  a. Plaintiffs Fulkerson And Latiolais Exceed The 20% Threshold Based On Loading And Unloading Alone .................. 21

  b. All Nine Of The Plaintiffs Exceed The 20% Threshold Once "Activities Relative" To Loading And Unloading Are Counted As Non-Seaman's Work, As They Must Be ................. 23

3. Third, BMSI's Failure To Carry Its Burden Of Proof Aside, Plaintiffs Also Performed Non-Seaman's Travel-Related Work That Is Not Reflected In The Captain's Logs, Which Further Confirms That There Is Easily A Fact Issue On Whether Plaintiffs Spent More Than 20% Of Their Working Time Performing Non-Seaman's Work ...................................................................................... 24

C. BMSI's Additional Arguments That Are Not Based On The DOL's 20% Rule, Or Controlling Law, Are Irrelevant And Meritless ..................................... 25

IV. BMSI'S REQUEST FOR A SUMMARY JUDGMENT "DO OVER" SHOULD BE DENIED .............................................................................................. 28

V. PLAINTIFFS' MOTION TO STRIKE TOM MCWHORTER'S EXPERT REPORT .............................................................................................. 30

VI. CONCLUSION ............................................................................................... 33

CERTIFICATE OF SERVICE ............................................................................................... 35

INDEX OF EXHIBITS ............................................................................................... 36

# TABLE OF AUTHORITIES

**CASES**

*Bammerlin v. Navistar Int'l Transp. Corp.*,
    30 F.3d 898 (7th Cir. 1994) ........................................................................ 32

*Blackmon v. Brookshire Grocery Co.*,
    835 F.2d 1135 (5th Cir. 1988) ................................................................... 12

*Bomar v. City of Pontiac*,
    Civil No. 08–12629, 2010 WL 3245798 (E.D. Mich. Aug. 17, 2010) ......... 31

*Brennan v. Greene's Propane Gas Serv., Inc.*,
    479 F.2d 1027 (5th Cir. 1973) ................................................................... 20

*Campers' World Int'l, Inc. v. Perry Ellis Intern., Inc.*,
    221 F.R.D. 409 (S.D.N.Y. 2004) ............................................................... 29

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012) .......................................................................... 27, 28

*Cowan v. Treetop Enterprises, Inc.*,
    120 F. Supp. 2d 672 (M.D. Tenn. 1999) ................................................... 32

*Dalheim v. KDFW-TV*,
    918 F.2d 1220 (5th Cir. 1990) ................................................................... 13

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) .............................................................................. 30, 31

*Dole v. Petroleum Treaters, Inc.*,
    876 F.2d 518 (5th Cir. 1989) .......................................................... 11, 18, 26

*Donovan v. Nekton, Inc.*,
    703 F.2d 1148 (9th Cir. 1983) .......................................................... 11, 26

*Enlow v. Tishomingo County*,
    962 F.2d 501 (5th Cir. 1992) ..................................................................... 28

*Gale v. Union Bag & Paper Corp.*,
    116 F.2d 27 (5th Cir. 1940) ....................................................................... 12

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..................................................................................30

*Godard v. Alabama Pilot, Inc.*,
  485 F. Supp. 2d 1284 (S.D. Ala. 2007) ...........................................3, 12, 24

*Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan & Trust Agreement*,
  812 F. Supp. 1376 (E.D. Pa.1992) ...............................................................32

*Jordan v. American Oil Co.*,
  51 F. Supp. 77 (D.R.I. 1943) .......................................................................16

*Knudsen v. Lee & Simmons, Inc.*,
  163 F.2d 95 (2nd Cir. 1947) ..................................................................2, 3, 18

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)......................................................................................30

*Lott v. Howard Wilson Chrysler-Plymouth*,
  203 F.3d 326 (5th Cir. 2000) .................................................................13, 32

*Marshall v. Burger King Corp.*,
  516 F. Supp. 722 (D. Mass. 1981) ...............................................................27

*Martin v. Bedell*,
  955 F.2d 1029 (5th Cir. 1992) ...............................2, 3, 10, 11, 12, 16, 18, 20, 21, 22, 25

*Martin v. McAllister Lighterage Line, Inc.*,
  205 F.2d 623 (2nd Cir. 1953) ................................................................2, 3, 18

*Marting v. Crawford & Co.*,
  NO. 00 C 7132, 2004 WL 305724 (N.D. Ill. Jan. 9, 2004) ..........................32

*McCabe v. Bailey*,
  No. 05-CV-73-LRR, 2008 WL 1818527 (N.D. Iowa Apr. 4, 2008) .............29

*McLaughlin v. King Welding, Inc.*,
  No. 86-1379-WJK(GX), 1988 WL 81539
  (C.D. Cal. Mar. 15, 1988)..................................................3, 4, 7, 16, 18, 19, 28

*McMahan v. Adept Process Servs., Inc.*,
  786 F. Supp. 2d 1128 (E.D. Va. 2011) .........................................................19

*Mendez v. The Radec Corp.*,
232 F.R.D. 78 (W.D.N.Y. 2005) ........................................................... 24, 25

*Owens v. SeaRiver Maritime, Inc.*,
272 F.3d 689 (5th Cir. 2001) .................................... 1, 2, 3, 4, 7, 9, 12, 13, 14, 15, 16,
.............................................................................. 17, 18, 20, 21, 22, 25, 33

*Pack v. Damon Corp.*,
434 F.3d 810 (6th Cir. 2006) ................................................................. 31

*Printy v. Crochet & Borel Services*,
196 F.R.D. 46 (E.D. Tex. 2000) .............................................................. 33

*Sanders v. York*,
No. CIV S-05-1989 GEB GGH P,
2008 WL 1925232 (E.D. Cal. Apr. 30, 2008) ........................................... 29

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
219 F.R.D. 552 (S.D.N.Y. 2004) ............................................................. 29

*Sigler v. Am. Honda Motor Co.*,
532 F.3d 469 (6th Cir. 2008) ................................................................. 31

*Smith v. City of Jackson, Miss.*,
954 F.2d 296 (5th Cir. 1992) ................................................................. 12

*Songer v. Dillon Resources, Inc.*,
618 F.3d 467 (5th Cir. 2010) ................................................................. 27

*Spurlock v. Fox*,
No. 3:09–cv–0765, 2010 WL 3807167 (M.D. Tenn. Sept. 23, 2010) ........... 31

*U.S. v. Cooks*,
589 F.3d 173 (5th 2009) ....................................................................... 31

*Vela v. City of Houston*,
276 F.3d 659 (5th Cir. 2001) ................................................................. 10

*Velazquez-Fernandez v. NCE Foods, Inc.*,
476 F.3d 6 (6th Cir. 2007) .................................................................... 27

*Weaver v. Pittsburgh Steamship Co.*,
153 F.2d 597 (6th Cir. 1946) ................................................................. 12

*Wilson v. Woods*,
    163 F.3d 935 (5th Cir. 1999) ...................................................................30

*Wirtz v. C & P Shoe Corp.*,
    336 F.2d 21 (5th Cir. 1964) ...................................................................27

*Worthington v. Icicle Seafoods, Inc.*,
    796 F.2d 337 (9th Cir. 1986) .................................................................11

**STATUTES**

29 U.S.C. § 207(a)(1) ...............................................................................10

29 U.S.C. § 213(b)(6) .............................................................................1, 10

**RULES AND REGULATIONS**

FED. R. CIV. P. 56(c)(4) ...........................................................................30

FED. R. EVID. 702 ...................................................................................30

29 C.F.R. § 783.31 ...........................................1, 7, 11, 12, 14, 17, 25

29 C.F.R. § 783.33 ...................................................................................16

29 C.F.R. § 783.36 ...................................................................................13

29 C.F.R. § 783.37 ...........................................................................1, 2, 12

29 C.F.R. § 785.39 ...................................................................................24

**OTHER AUTHORITIES**

11 James Wm. Moore et al., Moore's Federal Practice § 56.94[4][a] (3d ed. 2011) ........30

<u>**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUMMARY JUDGMENT**</u>
<u>**MOTION**</u>

Plaintiffs Keith Coffin, Eric Jones, Josh Fox, Jose Rangel, Gregory Robinson, Jason Villarreal, Zachary Latiolais, Mason Fulkerson, and Dustin Akins ("Plaintiffs") file this Response to Defendant Blessey Marine Services, Inc.'s ("BMSI") Motion for Summary Judgment On Plaintiffs' Seaman Status Under the FLSA, and Plaintiffs' Motion to Strike Tom McWhorter's expert report, showing as follows:

**I.    <u>SUMMARY</u>**

BMSI completely ignores the Department of Labor's ("DOL") 20% rule, which provides that if a worker spends more than 20% of his working time performing non-seaman's work, he is not exempt under the FLSA's "seaman's" exemption.  *See* 29 C.F.R. § 783.37.  Instead, BMSI boldly argues that 100% of the Tankermen's work is "seaman's" work – including loading and unloading barges and related activities.  But, the Fifth Circuit has already rejected that exact argument as being "extremely broad and unsupportable . . ."  *Owens v. SeaRiver Maritime, Inc*., 272 F.3d 698, 704 (5th Cir. 2001). Consequently, BMSI's motion is dead in the water, and must be denied.

The FLSA exempts "seaman" from its coverage.  29 U.S.C. § 213(b)(6).  For purposes of the FLSA, an employee – even a vessel-based one – is "employed as a seaman" only if his work "is rendered primarily as an aid in the operation of such vessel as a means of transportation, [and] provided he performs no substantial amount of work of a different character."  29 C.F.R. § 783.31.  Under the DOL's regulations that took effect in 1948, a "substantial amount" of work of a different character is any amount of

such work that exceeds 20%. 29 C.F.R. § 783.37. The "seaman's" exemption is to be read "narrowly," and it is BMSI's burden to prove that the exemption applies. *See Martin v. Bedell*, 955 F.2d 1029, 1035 (5th Cir. 1992).

The Plaintiffs are all Tankermen, who load and unload BMSI's barges.[1] While BMSI refuses to acknowledge it, the law is clear that loading and unloading barges, and activities relative thereto, are not seaman's work under the FLSA. *See Owens*, 272 F.3d at 704 (loading and unloading barges is not seaman's work because such activities do not aid in the operation of the towboat or barges as a means of transportation, "at least not significantly and not as their primary purpose."); *Martin v. McAllister Lighterage Line, Inc.*, 205 F.2d 623, 625 & n.5 (2nd Cir. 1953) (noting DOL's position, that still remains good law today, that "activities relative to" loading and unloading barges are not seaman's work); *Knudsen v. Lee & Simmons, Inc*., 163 F.2d 95, 96 n.1 (2nd Cir. 1947) ("Loading and unloading and activities relative thereto will be considered nonexempt work."). Under the FLSA, a worker – even a vessel-based one – who spends more than 20% of his working time performing non-seaman's work is not an exempt "seaman." 29 C.F.R. § 783.37; *Martin*, 955 F.2d at 1035 (stating that the DOL's 20% rule applies to vessel-based workers).

Based on the foregoing legal standards, BMSI's motion fails for two reasons. First, it fails to prove as a matter of law that Plaintiffs did not spend more than 20% of their working time performing non-seaman's work, specifically loading and unloading and activities relative thereto. In fact, BMSI did not even try to make such a showing.

---

[1]  Grenon Dep., Ex. A at 16.

For that reason alone, BMSI's motion is a non-starter that never even gets out of port, and must be denied. *See, e.g., Martin*, 955 F.2d at 1035-36 & n.24 (fact issue on 20% issue required reversal of trial court's judgment).[2]

Second, although it is not Plaintiffs' burden to prove that they spent more than 20% of their working time performing non-seaman's work (rather, it is BMSI's burden to prove that they did not), on this record, a reasonable jury could easily conclude that Plaintiffs spent more than 20% of their working time performing non-seaman's work, specifically loading and unloading barges, and activities relative thereto – none of which aid in the operation of the towboat or barges as a means of transportation, "at least not significantly and not as their primary purpose." *Owens*, 272 F.3d at 704. This too mandates the denial of BMSI's non-starter of a motion.

## II. FACTUAL BACKGROUND

Tankermen's job duties can be put into three relevant categories:

- First, actually loading and unloading barges – which, despite BMSI's "head in the sand" insistence to the contrary, are non-seaman's work under the FLSA. *See Owens*, 272 F.3d at 704.

- Second, activities closely related to loading and unloading barges, such as preparing the barges for loading and unloading, and maintaining the barges to ensure they are capable of safe and efficient loading and unloading – which again are non-seaman's work under the FLSA. *See Martin*, 205 F.2d at 625 & n.5; *Knudsen*, 163 F.2d at 96 n.1.

- Third, maintaining and performing work on the towboats and barges that primarily aids in their operation as a means of transportation – which is seaman's work under the FLSA.

---

[2] *See also Godard v. Alabama Pilot, Inc.*, 485 F. Supp. 2d 1284, 1301 (S.D. Ala. 2007) (fact issue on 20% rule required court to deny cross-motions for summary judgment); *McLaughlin v. King Welding, Inc.*, No. 86-1379-WJK(GX), 1988 WL 81539, at *3-4 (C.D. Cal. Mar. 15, 1988) (DOL action on behalf of, *inter alia*, vessel-based Tankermen denying employer's motion for summary judgment) (copy attached as Ex. V).

Each category is explained below in the context of this case.

### A. Tankermen's Duties Of Loading And Unloading Barges Are Non-Seaman's Work Under The FLSA

#### 1. The Essential Nature Of The Tankerman Position Is To Load And Unload Barges

Plaintiff Coffin testified at his deposition that when he was hired by BMSI, he was told that he was being hired to load and unload barges.[3] This makes sense because: (a) BMSI hires Tankermen because only a person with a valid Tankerman's license is legally authorized to load or unload BMSI's barges;[4] and (b) the very definition of a "Tankerman" is a "[p]erson trained, qualified, and certified to supervise transfer of liquid cargo (fuels) from shore to the barge."[5]

#### 2. Loading And Unloading Barges *Per Se* Are Non-Seaman's Work

Despite BMSI's protestations to the contrary, the law is clear that actual loading and unloading of cargo to and from barges are non-seaman's work. *Owens*, 272 F.3d at 704; *King Welding, Inc.*, 1988 WL 81539, at *3-4. This point is explained further in Section III.A.2(a) of this Response. Accordingly, under the law, all of the time Plaintiffs spent loading and unloading barges while product is actually transferring (*i.e.*, flowing), is non-seaman's work under the FLSA. *Id.* But, to limit the definition of "non-seaman's work" to merely loading and unloading *per se* would be to err. Rather, as explained further in Section III.A.2(b) of this Response, under the law, non-seaman's work also

---

[3] Coffin Dep., Ex. U at 61.

[4] Grenon Dep., Ex. A at 16; Grenon Dec., Ex. 1 to BMSI's Motion for Summary Judgment Against Coffin, Docket Entry No. 45 (noting that the Coast Guard requires a Tankerman be present on all vessels on which cargo loading and unloading may take place).

[5] *See* http://www.transportation-dictionary.org/Tanker_Man.

includes activities closely related to loading and unloading. Those activities are described in the following section.

**B.** **Tankermen's Work That Is Closely Related To Loading And Unloading Barges Is Also Non-Seaman's Work Under The FLSA**

According to BMSI's job description for Tankermen, "[t]he primary function of the Tankerman is to prepare the barges that are assigned to his boat for safe and complete loading and discharging of oil, refined, and petrochemical barges."[6] Preparing barges for safe and complete loading and discharging requires Tankermen to perform many time-consuming work activities that are closely related to loading and unloading itself, such as:

1. Activities to ensure the barges are capable of properly loading and unloading cargo, including: (1) "lubing the barge," which entails: (a) oiling grease-fittings on the barges;[7] (b) changing the oil and oil-filters on the engines on the barges;[8] (c) cleaning the barges of oil spots and debris;[9] (d) making sure all hatches and "dogs" are secured tightly;[10] and (e) doing an overall readiness inspection on the barge;[11] (2) checking pressure gauges for the heated fuel on BMSI's heater barges, and heating the liquefied cargo to ensure it could be loaded or unloaded properly;[12] (3) checking the outgoing or incoming temperature of the heating oil on heater barges to ensure the product can be discharged in a liquefied state;[13] (4) maintaining

---

[6] Tankerman Job Description, Ex. R; Grenon Dep., Ex. A at 8.

[7] Grenon Dep., Ex. A at 12-13; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-12; Jones Aff., Ex. Q at ¶¶ 13-15; Plaintiffs' Decs., Exs. B through H at ¶¶ 2g and h.

[8] Grenon Dep., Ex. A at 13-14; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-12; Jones Aff., Ex. Q at ¶¶ 13-15.

[9] Grenon Dep., Ex. A at 15; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-12; Jones Aff., Ex. Q at ¶¶ 13-15.

[10] Grenon Dep., Ex. A at 17-19; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-12; Jones Aff., Ex. Q at ¶¶ 13-15.

[11] Grenon Dep., Ex. A at19-21, 208-10, 259; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-12; Fulkerson Dec., Ex. B at ¶ 2c-e; Latiolais Dec., Ex. C at ¶ 2c-f; Fox Dec., Ex. D at ¶ 2c-f; Robinson Dec., Ex. E at ¶ 2c-f; Villarreal Dec., Ex. F at ¶ 2c-f; Rangel Dec., Ex. G at ¶ 2c-f; Atkins Dec., Ex. H at ¶ 2c-f; Jones Aff., Ex. Q at ¶¶ 13-15.

[12] Grenon Dep., Ex. A at 26-28; Coffin Aff., Exs. I at ¶ 17; Fulkerson Aff., Ex. J at ¶ 15; Fox Aff., Ex. L at ¶ 17; Villareal Aff., Ex. N at ¶ 17; Atkins Aff., Ex. P at ¶ 18; Jones Aff., Ex. Q at ¶¶ 13-15.

[13] Grenon Dep., Ex. A at 30-31, 257-60; Coffin Aff., Exs. I at ¶ 17; Fulkerson Aff., Ex. J at ¶ 15; Fox Aff., Ex. L at ¶ 17; Villareal Aff., Ex. N at ¶ 17; Atkins Aff., Ex. P at ¶ 18; Latiolais Dec., Ex. C at ¶ 2d; Fox Dec., Ex. D at ¶ 2d; Robinson Dec., Ex. E at ¶ 2d; Villarreal Dec., Ex. F at ¶ 2d; Rangel Dec., Ex. G at ¶ 2d; Atkins Dec., Ex. H at ¶ 2d; Jones Aff., Ex. Q at ¶¶ 13-15.

the generator on the barges, including checking and maintaining the cycles and voltage on the generator;[14] (5) draining water from the expansion tank before cranking up the heater on the barge;[15] and (6) fueling the barges, so that their engines work and can pump out cargo[16] – all of which a reasonable jury could find are done primarily so that the barge is fit and ready to either load or unload cargo, not primarily to aid the operation of the towboat or barge as a means of transportation.[17] BMSI keeps no records reflecting the amount of time Tankermen, or anyone else, spend performing these particular duties,[18] but BMSI admits that they can take hours.[19]

2.    Activities to prepare the barges for loading or unloading once the towboat and barge dock, including: (1) open up appropriate valves on the barge to ensure product is flowing;[20] (2) check all of the barges' hatches;[21] (3) make sure the barge is properly lit or flagged;[22] (4) ensure the barge's engine is in good shape to pump the cargo out;[23] (5) check the oil;[24] and (6) check the barge engine's fuel level to ensure there is enough fuel to discharge the cargo[25] – all of which a reasonable jury could find are done primarily so that the barge is fit and ready to either load or unload cargo, not primarily to aid the operation of the towboat or barge as a means of transportation.

3.    Securing the barge to the dock, and then attaching a hose, a process that can often take 50 minutes or (far) more,[26] and which a reasonable jury could

---

[14]  Grenon Dep., Ex. A at 33; Coffin Aff., Exs. I at ¶ 17; Fulkerson Aff., Ex. J at ¶ 15; Fox Aff., Ex. L at ¶ 17; Villareal Aff., Ex. N at ¶ 17; Atkins Aff., Ex. P at ¶ 18; Jones Aff., Ex. Q at ¶¶ 13-15.

[15]  Grenon Dep., Ex. A at 33-34; Coffin Aff., Exs. I at ¶ 17; Fulkerson Aff., Ex. J at ¶ 15; Fox Aff., Ex. L at ¶ 17; Villareal Aff., Ex. N at ¶ 17; Atkins Aff., Ex. P at ¶ 18; Jones Aff., Ex. Q at ¶¶ 13-15.

[16]  Fulkerson Dec., Ex. B at ¶ 2f; Latiolais Dec., Ex. C at ¶ 2g; Fox Dec., Ex. D at ¶ 2g; Robinson Dec., Ex. E at ¶ 2g; Villarreal Dec., Ex. F at ¶2g; Rangel Dec., Ex. G at ¶ 2g; Atkins Dec., Ex. H at ¶ 2g; Jones Aff., Ex. Q at ¶¶ 13-15. BMSI's barges are not self-propelled; rather, they are all towed by towboats. Grenon Dep., Ex. A at 22, 166. Thus, the purpose of fueling the barge is to ensure its engines work and can activate a pump that discharges cargo, not to aid in the operation of the towboats or barges as a means of transportation. Grenon Dep., Ex. A at 32, 255-58.

[17]  Grenon Dep., Ex. A at 8-22, 259.

[18]  Grenon Dep., Ex. A at 37, 94, 182-83.

[19]  Grenon Dep., Ex. A at 37-42; Plaintiff's Decs., Exs. B through H at ¶¶ 2g and h; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-12; Jones Aff., Ex. Q at ¶¶ 13-15.

[20]  Grenon Dep., Ex. A at 8-9.

[21]  Grenon Dep., Ex. A at 9-10.

[22]  Grenon Dep., Ex. A at 10.

[23]  Grenon Dep., Ex. A at 11.

[24]  Grenon Dep., Ex. A at 10.

[25]  Grenon Dep., Ex. A at 11.

[26]  Grenon Dep., Ex. A at 106-107.

find is done primarily so that the barge is fit and ready to either load or unload cargo, not primarily to aid the operation of the towboat or barge as a means of transportation.

4.    Disconnecting the hose from the barge after loading or unloading is complete, a process that can involve a crane and take 40 minutes or more,[27] and which a reasonable jury could find is done primarily so that the barge is fit and ready to either load or unload cargo, not primarily to aid the operation of the towboat or barge as a means of transportation.

Despite BMSI's arguments to the contrary,[28] a reasonable jury could conclude that all of the work activities set forth above are not seaman's work because they are not rendered primarily as an aid in the operation of the towboats or barges as a means of transportation, but rather primarily as an aid to load or unload the cargo.[29] *See* 29 C.F.R. § 783.31. Just like the actual loading and unloading addressed in *Owens*, these activities are closely related to loading and unloading and do not aid in the operation of BMSI's towboats or barges as a means of transportation, "at least not significantly and not as their primary purpose." *Owens*, 272 F.3d at 704. Hence, they are not seaman's duties. *Id.*; *see also King Welding, Inc.*, 1988 WL 81539, at *4. This point is explained further in Section III.A.2(b) of this Response. But for now it is significant to note that Dustyn Grenon ("Grenon"), BMSI's Director of Operations, himself admitted that the above-listed duties are closely related to loading and unloading cargo.[30] As Grenon testified:

---

[27] Grenon Dep., Ex. A at 109, 112, 136.

[28] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 8-18.

[29] Grenon Dep., Ex. A at 140-41; Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-18; Plaintiffs' Decs., Exs. B through H, *see generally* ¶¶ 2a-h.

[30] Grenon Dep., Ex. A at 140-41; BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 17. Grenon comically claimed he was an "expert" on the Tankermen's "seaman" status under the FLSA even though he admitted that the is not even familiar with the law. Grenon Dep., Ex. A at 196, 276.

Q: All right. The things you listed, those things are not actually cargo transferring themselves, rather, they're preparing the barges for cargo transfer; correct?

A: They're preparation; that's correct.

Q: And the very nature of the duties are, in fact, closely relating to either loading or unloading, in fact, their ancillary duty is either loading or unloading; correct?

Mr. Griffith: Objection to the form.

A: Yeah. A tankerman could do them, a deckhand could do them, you know, and they could be done a day before you load or discharge or an hour before you load or discharge.

**Q: I'm not asking you who does them or when they're done, but the nature of the duties themselves are closely related to either loading or unloading the barges?**

**A: Yes.[31]**

Grenon also admitted that activities that occur on dock – including items 3 and 4 above – are also inherently related to loading or unloading cargo, because the reason a BMSI towboat and barge go to dock at all is to either load or unload cargo.[32] As Grenon stated:

Q: So the only reason, the core company reason that the company would be in dock is to load or unload cargo; correct?

Mr. Griffith: Object to the form.

Q: Right?

A: Yes. That's what we're in the business of doing.[33]

---

[31] Grenon Dep., Ex. A at 140-41 (bold added).

[32] Grenon Dep., Ex. A at 149.

[33] Grenon Dep., Ex. A at 149.

Grenon's testimony further confirms that these activities closely related to loading and unloading do not aid in the operation of BMSI's towboats or barges as a means of transportation, "at least not significantly and not as their primary purpose," and thus are not seaman's work. *See Owens*, 272 F.3d at 704. While Grenon did try to argue that these sorts of duties could potentially be performed by other workers, such as Deckhands, the fact of the matter is that BMSI's own job description for Tankermen specifically assigns these activities only to Tankermen, not any other job category of employees, such as Deckhands,[34] and – consistent with BMSI's job description – the Plaintiffs credibly testified that *they* regularly performed those duties.[35]

### C. Tankermen's Work That Aids In The Towboats And Barges' Operation As A Means Of Transportation Is Seaman's Work Under The FLSA

As BMSI's job description for Tankermen accurately reflects, when Tankermen are not "loading or unloading cargo, or preparing the barges that are assigned to his boat for safe and complete loading and discharging of oil, refined, and petrochemical barges," they are responsible for performing a variety of other activities that do clearly constitute seaman's work under the FLSA, because they are rendered primarily as an aid in the operation of the towboats or barges as a means of transportation.[36] Such activities include participating in maintaining the towboat in a variety of ways, and handling lines

---

[34] *Compare* Tankerman Job Description, Ex. R *with* Deckhand Job Description, Ex. S.

[35] Plaintiffs' Affs., Exs. I through P, *see generally* ¶¶ 9-18; Plaintiffs' Decs., Exs. B through H, *see generally* ¶¶ 2a-h; Jones Aff., Ex. Q at ¶¶ 13-15.

[36] Tankerman Job Description, Ex. R; Grenon Dep., Ex. A at 8.

and rigging during tow building, locking, and docking activities.[37]  Plaintiffs do not

contest that they performed many duties that are in fact seaman's work under the FLSA.

## III.   ARGUMENT AND ANALYSIS

### A.    Legal Overview:  A Vessel-Based Employee Who Spends More Than 20% Of His Working Time Performing Non-Seaman's Work – Which Includes "Loading And Unloading And Activities Relative Thereto" – Is Not An Exempt Seaman Under The FLSA

#### 1.    A Vessel-Based Employee Who Spends More Than 20% Of His Working Time Performing Non-Seaman's Work Is Not An Exempt Seaman Under The FLSA

The FLSA generally requires that an employer employing an employee for a

workweek exceeding 40 hours must provide compensation for all hours in excess of 40 at

a rate of not less than one and one-half times the employee's regular rate.  *See* 29 U.S.C.

§ 207(a)(1).   But, there are some exemptions to this rule.   Under the law, those

exemptions are narrowly construed, and the burden of proof to establish them lies with

the employer. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

Relevant to this case, the FLSA excludes from the ambit of the overtime

requirement "any employee employed as a seaman." 29 U.S.C. § 213(b)(6).   Like other

exemptions in the FLSA, this exemption is also narrowly construed, and the burden of

proof to establish it lies with the employer.  *See Martin*, 955 F.2d at 1035 (noting that the

seaman's exemption is to be "read narrowly").   The Fifth Circuit has made clear that the

broad definition of "seaman" under the Jones Act is not interchangeable with the narrow

definition of "seaman" under the FLSA.   As the court has stated, "[i]t is well established

---

[37]  Tankerman Job Description, Ex. R.

that the term under the two acts has different, independent meanings." *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 521 (5th Cir. 1989). "The definition of seaman under the Jones Act is limited to that Act and its remedial goals." *Martin*, 955 F.2d at 1035. The Fifth Circuit has noted that, in contrast to the Jones Act, the remedial goals of the FLSA require the court to "read narrowly its exemptions, including the definition of "seaman." *Id.* "An employer has the burden of proving that its employees stand outside of this Act's very broad protection." *Id.*

Contrary to BMSI's position,[38] the Fifth Circuit has unequivocally held that "employment solely on seagoing vessels does not necessarily make one a "seaman" under the FLSA . . ." *Martin*, 955 F.2d at 1035. *See also* 29 C.F.R. § 783.31 (noting that one is not a "seaman" merely because one works on a vessel, or performs some maritime duties); *Donovan v. Nekton, Inc.,* 703 F.2d 1148 (9th Cir. 1983) ("One does not become a "seaman" under the FLSA merely because he performs services aboard a vessel on navigable water."); *cf. Worthington v. Icicle Seafoods, Inc.*, 796 F.2d 337, 338 (9th Cir. 1986) (employees who performed work on board a barge were not "employed as seamen" and were entitled to overtime compensation under FLSA if more than 20% of their work was not rendered to aid operation of the vessel as means of transportation).

Rather, for purposes of the FLSA, even a vessel-based worker is "employed as a seaman" only if his work "is rendered primarily as an aid in the operation of such vessel as a means of transportation, [and] provided he performs no substantial amount of work

---

[38] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 26-28.

of a different character." 29 C.F.R. § 783.31; *Owens*, 272 F.3d at 704 ("For purposes of the FLSA, work is seaman's work if it is "'rendered primarily as an aid in operation of [a] vessel as a means of transportation.'") (citing 29 C.F.R. § 783.31). Under DOL regulations that took effect in 1948, a "substantial amount" of work of a different character is any amount of such work that exceeds 20%. 29 C.F.R. § 783.37; *Godard*, 485 F. Supp. 2d at 1295 (noting that the DOL adopted the 20% rule in 1948). Since 1948, courts, including the Fifth Circuit, have consistently relied on the DOL's 20% rule when analyzing "seaman" status under the FLSA. *See Owens*, 272 F.3d at 702 (citing 29 C.F.R. § 783.37, which sets out the 20% rule, and noting that the Fifth Circuit has adopted and applied that rule in prior decisions); *Martin*, 955 F.2d at 1036 (Fifth Circuit case relying on the DOL's 20% rule); *Godard*, 485 F. Supp. 2d at 1295 (observing that courts faced with the task of applying the FLSA's seaman exemption "routinely rely on the DOL's 20% rule."). Yet, BMSI's motion stunningly wholly fails to apply the DOL's 20% rule, which makes its motion a clear loser from the start.[39]

"The decision 'whether an employee is exempt under the [FLSA] is primarily a question of fact which must be reviewed under the clearly erroneous standard . . . .'" *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992) (quoting *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir. 1988)). However, "[t]he ultimate

---

[39] To try to justify its snubbing of the 20% rule, BMSI heavily relies on pre-1948 cases that did not analyze seaman's status by applying that rule, such as *Gale v. Union Bag & Paper Corp.*, 116 F.2d 27 (5th Cir. 1940), *Jordan v. American Oil Co.*, 51 F. Supp. 77 (D.R.I. 1943), and *Weaver v. Pittsburgh Steamship Co.*, 153 F.2d 597 (6th Cir. 1946). *See* BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 23-25. BMSI fails to explain that none of these cases could have applied the 20% rule, because they were all decided before the DOL implemented the rule in 1948. Accordingly, neither *Gale, Jordan,* nor *Weaver* are helpful, much less dispositive, in the analysis of this particular case. To the contrary, following these outdated, pre-1948 cases would lead the Court treacherously down an archaic and legally wrong road.

decision whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth*, 203 F.3d 326, 331 (5th Cir. 2000) (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990)).

> **2.** **"Loading And Unloading <u>And Activities Relative Thereto</u>" Are Non-Seaman's Work, So A Vessel-Based Employee Who Spends More Than 20% Of His Working Time Performing Such Work Is Not An FLSA-Exempt Seaman**
>
> a. <u>Loading And Unloading Barges *Per Se* Are Non-Seaman's Work Under *Owens*</u>

While BMSI refuses to recognize it, controlling case law makes clear that loading and unloading liquid cargo to and from barges is not "seaman's work," because such activities are not rendered primarily as an aid in the operation of such vessel as a means of transportation, "at least not significantly and not as their primary purpose." *See Owens*, 272 F.3d at 704; 29 C.F.R. § 783.36. Thus, an employee who spends more than 20% of his working time loading and unloading liquid cargo to and from barges is not "employed as a seaman" under the FLSA. *See Owens*, 272 F.3d at 704 (reversing summary judgment for employer where evidence showed that employee with Tankerman title clearly spent more than 20% of his time loading and unloading liquid cargo from a barge during the distinct time period at issue in the case).

BMSI struggles to escape the fatal grasp of this clear law on its defense by making two meritless arguments. First, BMSI argues that loading and unloading barges is seaman's work, because if done improperly, it could affect the seaworthiness of the

barges or the towboats that tow them.[40] That point is frankly the entire foundation of BMSI's motion. BMSI makes much of the fact that even the Plaintiffs themselves recognize this point, factually.[41] So, BMSI's foundational argument goes, loading and unloading really "is rendered primarily as an aid in the operation of such vessel as a means of transportation . . . ." 29 C.F.R. § 783.31.[42] BMSI's foundational argument is foreclosed as a matter of law by the Fifth Circuit's decision in *Owens*.

In *Owens*, the employer, SeaRiver, also argued that a Tankerman's duties relating to loading and unloading barges should be considered seaman's duties, because if they were performed improperly, or not performed at all, the vessel and the barges that attached to it could not be safely operated. *Owens*, 272 F.3d at 704. The district court agreed, and found that the Tankermen were "seaman" as a matter of law. *Id*. at 701. The Fifth Circuit reversed the district court, and rejected SeaRiver's argument as "an extremely broad and unsupportable construction of 'aid in operation' of a 'vessel as a means of transportation.'" *Id*. at 704. In so doing, the Court stated:

> SeaRiver defends the district court's conclusion that Owens's loading and unloading activities were seaman's work primarily by arguing that if a barge was loaded or unloaded improperly it could not be safely moved or towed, and could even break apart. Accordingly, SeaRiver argues, Owens's loading and unloading duties had special significance, and were in aid of the operation of the barges as a means of transportation. **SeaRiver's argument assumes an extremely broad and unsupportable construction of "aid in the operation" of a "vessel as a means of transportation."**

---

[40] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 2-4, 14-18; Grenon Dep., Ex. A at 59.

[41] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 15-18.

[42] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 2-4, 14-18; Grenon Dep., Ex. A at 59.

Owens's loading and unloading duties related almost exclusively to removing petroleum products from the barge, not to moving or mooring the barge. **Of course, the unloading and loading would have to be done in a safe or proper way, but that only prepares the vessel for navigation; it does not aid in its actual operation as a means of transportation.** A rule that includes within the definition of "seaman's work" for FLSA purposes all work that prepares a vessel for navigation would include quite a few activities, most of which would not fit comfortably within a commonsense definition of "seaman's work." And, SeaRiver's broad definition of "seaman's work" neglects the primary purpose of the loading and unloading – to get cargo on or off the barge. Even though Owens's loading and unloading duties were technical, specialized, and had to be done properly in order to assure proper navigation of the barge, they were still primarily cargo loading and unloading duties. **While Owens's other duties may have aided in the operation of the vessel as a means of transportation, Owens's loading and unloading activities did not,** *at least not significantly and not as their primary purpose.*[43]

BMSI's foundational argument is indistinguishable from the employer's argument in *Owens*. It rests on the exact same "extremely broad and unsupportable construction of 'aid in operation' of a 'vessel as a means of transportation.'" *Id*. at 704. As such, it must be rejected.

Second, BMSI repeatedly tries to escape the dispositive effect of *Owens* on its defense by trying to distinguish *Owens* on the ground that the Tankerman there was land-based, not vessel-based like the ones in this case.[44] But, BMSI just made that distinction up – there is no legal basis for it. To the contrary, the law is well-settled that whether a worker is "employed as a seaman" ultimately depends on "the character of the work he actually performs **and not on what it is called or the place where it is performed**."

---

[43]  *Id*. at 704 (bold and italics added, footnote omitted).

[44]  BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 21-26.

*Martin*, 955 F.3d at 1035 (citing 29 C.F.R. § 783.33) (bold added). Thus, BMSI's location-based distinction (vessel-based versus not vessel-based) has already been flatly rejected by the Fifth Circuit and the DOL. Along the same lines, the Fifth Circuit further observed: "[t]he entire Act is pervaded by the idea that what each employee actually does determines its application to him." *Martin*, 955 F.2d at 1036 n. 24. This general rule, of course, applies to Tankermen. *See King Welding, Inc.*, 1988 WL 81539, at *3-4 (decision agreeing with the DOL's assertion that the mere fact that Tankermen are vessel-based does not render them exempt under the FLSA).

Finally, BMSI's reliance on *Jordan v. American Oil Co*., 51 F. Supp. 77 (D.R.I. 1943) – a case decided before the DOL even adopted the 20% rule in 1948 – does nothing to alter this analysis. The Court should reject BMSI's invitation to rely on the inapplicable, out-of-date, out-of-circuit decision in *Jordan*, rather than the timely controlling precedent from the Fifth Circuit in *Owens*. *See also* footnote 39, *supra*. In short, it is crystal clear that, under controlling precedent, loading and unloading barges is not seaman's work, irrespective of whether the Tankerman performing such work is land-based or vessel-based. Thus, the time Plaintiffs spent loading and unloading the barges clearly counts as non-seaman's work towards the DOL's 20% rule.

> b.   "Activities Relative" To Loading And Unloading Barges Are Non-Seaman's Work – Including The Tankermen's Standby Or Waiting Time On Dock

A potentially significant question in this case is: What work, other than loading and unloading barges *per se*, counts as non-seaman's work? BMSI offers no coherent answer that is rooted in any established legal rule. Plaintiffs submit that the logically and

legally correct answer is that any "activities relative" to loading and unloading the barges are also non-seaman's work. Such "activities relative" to loading and unloading the barges include tasks that are only or primarily done because of the need to load or unload the barges, such as the activities identified in Section II.B of this Response, *supra*.

The law supports this answer on both a general and specific level. On a general level, recall that the definition of "seaman's work" is work "rendered primarily as an aid in operation of [a] vessel as a means of transportation." *Owens*, 272 F.3d at 704 (citing 29 C.F.R. § 783.31). "Activities relative" to loading and unloading barges, such as those listed above, are not rendered primarily as an aid in operation of a vessel as a means of transportation, but rather to prepare to load and unload cargo.[45] Just like the actual loading and unloading addressed in *Owens*, activities closely related to loading and unloading do not aid in the operation of BMSI's towboats or barges as a means of transportation, "at least not significantly and not as their primary purpose." *Id*. Critically, as previously noted, even Grenon himself unwittingly essentially admitted that fact on pages 140 and 141 of his deposition.[46] Therefore, such activities related to loading and unloading cargo do not logically, factually, or legally fit the definition of "seaman's work" as set forth by the DOL, the Fifth Circuit's opinion in *Owens*, and even BMSI's own Director of Operations.

On a specific level, there are at least two reasons to believe Plaintiffs' interpretation is the right one. First, the DOL's interpretive bulletins issued in July 1943

---

[45] Grenon Dep., Ex. A at 140-41.
[46] Grenon Dep., Ex. A at 140-41.

and September 1947 expressly provided that, "[l]oading and unloading <u>and activities</u> <u>relative thereto</u> will be considered nonexempt work." *Martin*, 205 F.2d at 625 & n.5 (underline added); *see also Knudsen*, 163 F.2d at 96 n.1 ("Loading and unloading and activities relative thereto will be considered nonexempt work."). This specific language was not included in the current DOL interpretive bulletin, but there is no reason to suspect that it is no longer the law. To the contrary, as the Fifth Circuit has observed, the DOL's interpretation of what constitutes "seaman's" work under the "seaman's" exemption has not varied since the FLSA's enactment. *See Martin*, 955 at 1035 & n. 18 (noting DOL's consistent interpretation of seaman exemption); *Petroleum Treaters*, *Inc.* 876 F.2d at 522 (same). Second, it is reasonable to infer from the *Owens* opinion that what the Court referred to as "Owens's loading and unloading activities" included activities related to loading and unloading, not – as BMSI would illogically have it – merely Owens's activities during the actual transfer of liquid cargo while it is literally flowing through the hose. *See Owens*, 272 F.3d at 704. This logical inference is bolstered by the court's decision in *King Welding, Inc.*, that likewise indicates that a Tankerman's activities related to actual loading and unloading are not seaman's work. 1988 WL 81539, at *3-4. The fact that *King Welding, Inc.* was a President Reagan era DOL enforcement action demonstrates that the DOL has long held this view.

There is one last important legal point to be made here (although, as usual, BMSI failed to address it): while on dock, Tankermen often have on-duty standby or waiting

time during the loading and unloading process.[47]   The question then is how to classify that working time under the FLSA – *i.e.*, as exempt seaman's work, or non-exempt non-seaman's work.   Under the FLSA, the sensible general rule in this situation is that such standby or waiting time "assume[s] the character of the tasks the Plaintiffs were waiting to perform[.]" *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1139 (E.D. Va. 2011), and cases cited therein.   That rule ordinarily favors an employer, because employees on standby are usually waiting to perform exempt work.   *Id*.   But, here, in this unique factual context, application of that rule favors the Plaintiffs.   This is so because, while they are on dock, the Tankermen are only standing by or waiting to perform loading or unloading, or activities relative thereto[48] – all of which are non-seaman's work.   *See supra*.   Indeed, Tankermen alone are the only ones legally authorized to load or unload BMSI's barges,[49] which is the reason they are on dock when barges are scheduled to be loaded or unloaded.[50]   As a result, for FLSA purposes, the Plaintiffs' standby or waiting time while on dock takes on the character of non-exempt non-seaman's work for purposes of the 20% analysis.   *Id*.

---

[47]   Grenon Dep., Ex. A at 106-09, 112-16, 122-23, 136.
[48]   Grenon Dep., Ex. A at 138-41, 149.
[49]   Grenon Dep., Ex. A at 16.
[50]   Grenon Dep., Ex. A at 138-41, 149.

### B. Analysis: Plaintiffs Are Not FLSA-Exempt Seaman As A Matter Of Law Because A Reasonable Jury Could Easily Conclude That They Spent More Than 20% Of Their Working Time Performing Non-Seaman's Work – Specifically, "Loading And Unloading And Activities Relative Thereto"

#### 1. First, BMSI's Motion Fails To Carry Its Burden To Prove As A Matter Of Law That Plaintiffs Did Not Spend More Than 20% Of Their Working Time Performing Non-Seaman's Work

To win summary judgment, it is BMSI's burden to prove as a matter of law that the Plaintiffs did not spend more than 20% of their time performing non-seaman's work. *Martin*, 955 at 1035. The employer's claim of exemption must be construed narrowly and in favor of the employee. *See Martin*, 955 at 1035; *Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1032 (5th Cir. 1973). BMSI offered no evidence on the 20% rule as to any of the Plaintiffs. In other words, BMSI's motion did not just fail to reach its intended summary judgment destination, it never even left port on its voyage. For that reason alone, BMSI's motion must be denied.

Instead of offering an evidence-based analysis applying the 20% rule, BMSI simply argued that 100% of the Tankermen's work is "seaman's" work – even including the loading and unloading duties set forth in Section II.A, and the activities closely related to loading and unloading set forth in Section II.B.[51] But, as explained above, BMSI's argument, which is just like the employer's in *Owens*, fails because it is "an extremely broad and unsupportable construction of 'aid in operation' of a 'vessel as a means of transportation.'" *Owens*, 272 F.3d at 704. Under *Owens* and the other above-cited authorities, the Plaintiffs' loading and unloading duties set forth in Section II.A, and

---

[51] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 8-18; Grenon Dep., Ex. A at 44-45, 114, 199, 208, 211.

the Plaintiffs' activities closely related to loading and unloading set forth in Section II.B,[52] do qualify as non-seaman's work because they do not aid in the operation of the towboats or barges as a means of transportation, "at least not significantly and not as their primary purpose."[53]  *Id*.; *see also supra*, Sections II.A, II.B, and III.A.2(a) and (b).  Since BMSI did not even attempt to place a percentage on those non-seaman's duties, much less show they amounted to less than 20% of the Plaintiffs' work – which was its burden to do – its motion for summary judgment must be denied.

> **2.  Second, BMSI's Failure To Carry Its Burden Of Proof Aside, A Legally Correct Analysis Of The Captains Logs Also Establishes A Fact Issue On Whether Plaintiffs Spent More Than 20% Of Their Working Time Performing Non-Seaman's Work**

> a.  Plaintiffs Fulkerson And Latiolais Exceed The 20% Threshold Based On Loading And Unloading Alone

Even if it was Plaintiffs' burden to prove they spent more than 20% of their working time performing non-seaman's work – and under the law it is not – they more than did so.  *See Martin*, 955 F.2d at 1035 ("An employer has the burden of proving that its employees stand outside of this Act's very broad protection.").  Plaintiffs Fulkerson and Latiolais analyzed the Captains Logs specific to the time they worked on BMSI vessels.  Fulkerson concluded that he spent 21.89% of his working time loading and unloading the barges.[54]  Latiolais concluded that he spent 22.73% of his working time loading and unloading the barges.[55]  The only difference between the analysis Fulkerson

---

[52]  BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 8-18; Grenon Dep., Ex. A at 44-45, 114, 199, 208, 211.

[53]  Grenon Dep., Ex. A at 141.

[54]  Fulkerson Declaration, Ex. B at ¶ 2b.

[55]  Latiolais Declaration, Ex. C at ¶ 2b.

and Latiolais did, and what BMSI did through Grenon's home-cooked "analysis," was that Fulkerson and Latiolais defined loading and unloading as from the time the hose went on the barge, to the time it went off the barge, while BMSI only counted time that cargo was actually transferring through the hoses, even if they were connected to the barge.[56] BMSI's cramped construction does not withstand analysis under *Owens*, which is probably why BMSI did not even bother to offer it on summary judgment. As Grenon himself conceded in his deposition, once on dock, with hoses connected to the barge, the only reason the Tankerman is working is primarily in aid of loading and unloading cargo, not primarily in aid of operation of the towboat or barge as a means of transportation.[57] Accordingly, any activities performed by the Tankerman on the dock after the hose is attached are not "seaman's" work because they do not aid in the operation of the towboats or barges as a means of transportation, "at least not significantly and not as their primary purpose." *Owens*, 272 F.3d at 704.

To prevail on summary judgment, BMSI has the burden of proving as a matter of law that Fulkerson and Latiolais stand outside of the FLSA's "very broad protection." *Martin*, 955 F.2d at 1035. BMSI has not satisfied that burden. To the contrary, Fulkerson's and Latiolais's undisputed analysis demonstrates that they spent more than 20% of their working time performing non-seaman's work – specifically loading and unloading barges – and consequently they are not exempt "seamen" under the FLSA. In

---

[56] *Compare* Fulkerson Declaration, Ex. B at ¶ 2b and Latiolais Declaration, Ex. C at ¶ 2b with Grenon Dec., Ex. A to BMSI's Motion for Summary Judgment.

[57] Grenon Dep., Ex. A at 149.

fact, since BMSI offered no evidence to the contrary, a reasonable jury would be compelled to reach such a conclusion on this record.

> b. All Nine Of The Plaintiffs Exceed The 20% Threshold Once "Activities Relative" To Loading And Unloading Are Counted As Non-Seaman's Work, As They Must Be

Plaintiffs' declarations properly include loading and unloading, and activities relative to loading and unloading, as non-seaman's work for purposes of the 20% analysis, and all nine of them credibly concluded that they spent more than 20% of their working time performing non-seaman's work:[58]

| TANKERMAN | PERCENTAGE OF TIME SPENT PERFORMING NON-SEAMAN'S DUTIES[59] |
|---|---|
| Keith Coffin | >20.00% |
| Eric Jones | >20.00% |
| Dustin Akins | 27.43% |
| Josh Fox | 29.15% |
| Mason Fulkerson | 33.50% |
| Zachary Latiolais | 34.31% |
| Jose Rangel | 23.97% |
| Gregory Robinson | 29.00% |
| Jason Villarreal | 30.79% |

The Plaintiffs' analyses and conclusions are consistent with BMSI's own job description for Tankermen, which provides that "[t]he primary function of the Tankerman is to prepare the barges that are assigned to his boat for safe and complete loading and discharging of oil, refined, and petrochemical barges"[60] – all of which, as explained herein, are non-seaman's duties. *See supra*, Sections II.A, II.B, and III.A.2(a) and (b).

---

[58] Plaintiffs' Decs., Exs. B through H; Coffin Aff., Ex. I; Jones Aff., Ex. Q.

[59] All nine of the Plaintiffs reached their conclusions after an analysis of the Captains Logs relevant to their employment tenure at BMSI, except Jones. *See* Plaintiffs' Decs., Exs. B through H; Coffin Aff., Ex. I; Jones Aff., Ex. Q.

[60] Tankerman Job Description, Ex. R; Grenon Dep., Ex. A at 8.

Given that BMSI itself defined the Tankerman's primary functions to be the performance of non-seaman's work, the Company should not be surprised that a reasonable jury could conclude that all nine of the Plaintiffs spent more than 20% of their working time performing non-seaman's work, and thus do not fit the FLSA's definition of "seamen." Accordingly, there is simply no way BMSI's motion for summary judgment can or should be granted. *See Godard*, 485 F. Supp. 2d at 1301 (fact issue on 20% rule precluded summary judgment for either party). Indeed, given that Plaintiffs' declarations are undisputed on the case-dispositive 20% point, it is actually Plaintiffs who are entitled to summary judgment, not BMSI.

> **3.**  **Third, BMSI's Failure To Carry Its Burden Of Proof Aside, Plaintiffs Also Performed Non-Seaman's Travel-Related Work That Is Not Reflected In The Captain's Logs, Which Further Confirms That There Is Easily A Fact Issue On Whether Plaintiffs Spent More Than 20% Of Their Working Time Performing Non-Seaman's Work**

Plaintiffs did not include travel time in their analyses. But, Plaintiffs' travel time to and from the vessel at the start and end of their hitches during their ordinary workday (which, in this case, could be any time, given their "six on and six off" schedules[61]) is working time under the FLSA. As 29 C.F.R. § 785.39 states:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties.

*See also Mendez v. The Radec Corp.*, 232 F.R.D. 78, 85-89 (W.D.N.Y. 2005).

---

[61]  BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 6.

Plaintiffs' travel time is thus compensable working time. Moreover, because it is intuitive that their travel to and from the vessels was not work rendered primarily as an aid of the operation of BMSI's towboats or barges as a means of transportation,[62] the travel time must be considered non-seaman's work. *See Owens*, 272 F.3d at 704. Plaintiffs' current analyses do not include travel time, and still easily exceed the DOL's 20% threshold. *See supra*. Accordingly, including travel time would naturally push Plaintiffs even further over the 20% non-seaman's work threshold.[63]

### C.    BMSI's Additional Arguments That Are Not Based On The DOL's 20% Rule, Or Controlling Law, Are Irrelevant And Meritless

As part of its unrelenting effort to avoid the fatal effect of the DOL's 20% rule on their motion for summary judgment, BMSI makes a number of other irrelevant and meritless arguments. First, BMSI broadly argues that "all vessel-based personnel" are exempt seaman as a matter of law.[64] But, the Fifth Circuit has already held that the opposite is true: "employment solely on seagoing vessels does not necessarily make one a "seaman" under the FLSA . . ." *Martin*, 955 F.2d at 1035; 29 C.F.R. § 783.31 (noting that one is not a "seaman" merely because one works on a vessel, or performs some maritime duties). BMSI's argument here, like most of its others, simply ignores binding circuit precedent, and amounts to an invitation to commit reversible error.

Second, BMSI strains to convince the Court that if the Tankermen were found to be nonexempt under the FLSA it "would produce a host of inequitable results" and

---

[62] Coffin Aff., Ex. I at ¶¶ 18-20; *see also* Coffin Dep., Ex. U at 228-31.

[63] Plaintiffs' Decs., Exs. B  through H at ¶ 4; Coffin Aff., Ex. I at ¶¶ 18-20; Plaintiffs' Affs., *see generally* Exs. J-P at ¶¶ 16-21.

[64] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 26-28.

"create even more burdens."[65]   In rejecting the same argument in another "seaman's" exemption case, a court stated, "Nekton may be correct that exempting some employees and not others who sometimes perform identical work at the same time on the same ORV vessel may create significant problems.   But those are problems which should be addressed to Congress and the agencies charged with the administration of the applicable laws and not to the Courts."   *Donovan,* 703 F.2d at 1151.   The Fifth Circuit made a similar point in *Petroleum Treaters, Inc*., stating:   "There is no question that payment of overtime will increase wage expenses.   This obvious fact, which occurs whenever the statute applies, is no justification for not paying overtime under the Act."   876 F.2d at 523-24.   Moreover, BMSI's argument here stands in some contrast to what BMSI told its Tankermen when it was trying to convince them not to opt into this case.   Back then, BMSI told the Tankermen that if it lost this case, it would simply calculate an hourly rate for them equivalent to their current day rate.[66]   As BMSI's lawyer put, "[i]n other words, your future pay will not change much, if at all, based on the lawsuit."[67] So, BMSI's Halloween season tale of a boogeyman who brings with him "a host of inequitable results," and "even more burdens"[68] on the Company is as credible as the *Tale of the Headless Horseman*.

---

[65]   BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 28 n. 107.

[66]   Letter from Griffith to All Current BMSI Tankermen of 08/09/11, Ex. T.

[67]   Letter from Griffith to All Current BMSI Tankermen of 08/09/11, Ex. T.

[68]   BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 28 n. 107.

Third, BMSI tries to convince the Court that Plaintiffs' claims are "somewhat nonsensical" because "[f]or [Plaintiffs] to prevail, the Court would have to be persuaded that this was the only industry in America where an individual would be promoted out of an exempt position (as a Deckhand) to a non-exempt position (as a Tankerman) and then promoted into an exempt position (as a Relief Captain or Steersman)."[69]  This argument, like the ones before it, is untethered to the governing legal rules under the FLSA.  As such, it has no legal relevance.  But even if it were relevant, BMSI presented no proof that there is no other industry in America where such a thing could occur, and Plaintiffs counsel can think of some.[70]

Finally, BMSI creatively contends that *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), somehow entitles it to summary judgment.  BMSI's basic argument is that the DOL has never sued any company in the inland barge industry for misclassifying its vessel-based Tankermen before.  This last-ditch argument fails for many reasons.  First and foremost, it is not true that the DOL has never sued any employer in the inland barge industry for misclassifying its vessel-based Tankermen.  It

---

[69]  BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 26 n. 100.

[70]  For example, an interstate delivery driver of a large delivery truck for a retail company with no managerial duties is exempt from overtime under the FLSA's Motor Carrier Act exemption.  *See, e.g., Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 475-76 (5th Cir. 2010).  If the truck driver was then promoted to an assistant manager position at their retail employer's warehouse, he or she could easily lose their exempt status, and become nonexempt, notwithstanding their promotion.  *See, e.g., Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 29 (5th Cir. 1964) (assistant managers in employer's warehouse were not exempt from FLSA's overtime provisions); *Marshall v. Burger King Corp.*, 516 F. Supp. 722 (D. Mass. 1981) (assistant managers did not qualify for executive or administrative employee exemption from FLSA's overtime requirements).  If the employee was then promoted from assistant manager to manager of the entire warehouse, then he or she would likely again become exempt.  *See, e.g., Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 13-14 (6th Cir. 2007) (warehouse manager was "exempt executive employee," under the short test for the FLSA, and thus, he was not eligible for overtime compensation, where he was in charge of day to day operations of warehouse, and supervised six to nine employees.).  There is nothing "nonsensical" about this dynamic.

did exactly that in *McLaughlin v. King Welding, Inc.*, No. 86-1379-WJK(GX), 1988 WL 81539 (C.D. Cal. Mar. 15, 1988) (copy attached as Ex. V). In addition, the *Christopher* court did not hold, as BMSI seems to suggest, that when a particular job position in an industry has not been the subject of DOL initiated litigation for many years, employers in that industry somehow become forever immune from FLSA liability. That would reward successful long-time violators of the FLSA, and nothing in the *Christopher* decision endorses that freakish result. Rather, the primary point *Christopher* made is that courts need not defer to the DOL's interpretation of a regulation when the DOL's interpretation is offered through *amicus* briefs that are inconsistent with its own prior regulatory guidance and enforcement efforts. *Christopher*, 132 S. Ct. at 2167-69. That is not an issue in this case. Consequently, *Christopher* has no application here.

## IV.  BMSI'S REQUEST FOR A SUMMARY JUDGMENT "DO OVER" SHOULD BE DENIED

Revealing a glimmer of self-awareness about just how weak its current motion is, BMSI requested permission to file a second motion for summary judgment – to address the DOL's 20% rule – if its present motion was denied.[71] But BMSI has had its chance at summary judgment. It struck out. It is not entitled to a "do over," and it is well within the Court's discretion not to permit one. *See Enlow v. Tishomingo County*, 962 F.2d 501, 507 (5th Cir. 1992) (whether to permit successive summary judgment motions is left to the district court's discretion).

---

[71] BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, Docket Entry No. 124 at 1.

That BMSI is not entitled to a summary judgment "do over" is especially clear

because BMSI submitted Grenon's 20% analysis on every one of the current Plaintiffs,

except Jones, long ago,[72] but strategically decided not to rely on Grenon's analyses in its

motion (most likely because Grenon's subsequent deposition revealed that his analyses

were grossly artificially deflated, fatally defective, and entirely unreliable).[73]   In other

words, BMSI had the evidence and the witness it needed to raise the 20% rule argument

in its motion for summary judgment, but it decided not to do so.   That was BMSI's

strategic gambit.   It should have to live with the consequences of its own litigation

strategy.  *See, e.g., Campers' World Int'l, Inc. v. Perry Ellis Intern., Inc.,* 221 F.R.D. 409

(S.D.N.Y. 2004) ("it is improper for a party to file a successive motion for summary

judgment which is not based upon new facts and which seeks to raise arguments it could

have raised in its original motion"); *Siemens Westinghouse Power Corp. v. Dick Corp.,*

219 F.R.D. 552, 554 (S.D.N.Y. 2004) (explaining that courts do "not approve in general

the piecemeal consideration of successive motions for summary judgment because parties

ought to be held to the requirement that they present their strongest case for summary

judgment when the matter is first raised") (citations omitted).[74]

---

[72]   Declaration of Dustyn Grenon, Docket Entry No. 45-1, that was submitted to the Court on July 1, 2011 (providing his 20% analysis on Plaintiff Coffin); Grenon Dep., Ex. A at 54-55 (agreeing that he submitted a supplemental declaration prior to his deposition on providing his 20% analysis on the remainder of the Plaintiffs, except Plaintiff Jones).

[73]   Grenon Dep., Ex. A at, for example, page 34-37, 44-45, 94, 113, 126-27, 160.

[74]   *See also Sanders v. York*, No. CIV S-05-1989 GEB GGH P, 2008 WL 1925232, *4 (E.D. Cal. Apr. 30, 2008) ("The court will not allow defendants another 'bite at the apple' to file a second summary judgment motion addressing the merits of the remaining claims . . . as it would waste court resources and delay resolution of this action"); *McCabe v. Bailey*, No. 05-CV-73-LRR, 2008 WL 1818527, *1 (N.D. Iowa Apr. 4, 2008) (enforcing "one-summary-judgment-motion-per-party" rule "to conserve scarce judicial resources, prevent repetitive motions and forestall potential abuse").

## V.  PLAINTIFFS' MOTION TO STRIKE TOM MCWHORTER'S EXPERT REPORT

In deciding whether to admit expert testimony, district courts are guided by the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702.  In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers and permit the admission only of reliable and relevant expert testimony.  *See Daubert*, 509 U.S. at 590–93.  Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.  *See Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  An appellate court reviews a trial court's decision to admit expert testimony under an abuse of discretion standard.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136, 141–43 (1997).

Even if proposed expert testimony passes the *Daubert*/Rule 702 test, as a general matter, expert testimony may only be introduced in summary judgment proceedings through an affidavit or declaration that satisfies the general requirements for summary judgment affidavits and declarations set forth in FED. R. CIV. P. 56(c)(4).  *See* 11 James Wm. Moore et al., Moore's Federal Practice § 56.94[4][a] (3d ed. 2011).  Thus, among other requirements, the affidavit or declaration must be a sworn document or declared to be true under penalty of perjury.  *Id.*  Accordingly, unsworn expert reports constitute

hearsay and may not be considered at the summary judgment stage. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 479–80 (6th Cir. 2008) (finding that district court improperly relied on defendant's unsworn expert reports in rendering summary judgment for defendant); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) (excluding unsworn expert report from consideration at summary judgment stage); *Spurlock v. Fox*, No. 3:09–cv–0765, 2010 WL 3807167, at *14–15 (M.D. Tenn. Sept. 23, 2010) (granting motion to strike plaintiffs' expert witness reports as inadmissible hearsay); *Bomar v. City of Pontiac*, Civil No. 08–12629, 2010 WL 3245798, at *10 (E.D. Mich. Aug. 17, 2010) (excluding unsworn psychological report from summary judgment record).

First, Tom McWhorter's ("McWhorter") unsworn expert report (Exhibit 1 to BMSI's motion) should be stricken from the record because it is inadmissible hearsay. *See supra*. Second, McWhorter's expert report is irrelevant under Federal Rule of Evidence 401, because it fails to analyze the Plaintiffs' "seaman" status under the controlling law, including the DOL's 20% rule. For that reason too, it is inadmissible, and should be stricken from the record. Third, McWhorter's expert report should be stricken from the record because he has not demonstrated that he has any special "knowledge, skill, experience, training, or education" in determining "seaman's" status under the FLSA, or even the FLSA in general. Hence, his report flunks the *Daubert*/Rule 702 test. *See, e.g., U.S. v. Cooks*, 589 F.3d 173, 180 (5th 2009) (witness was not qualified as an expert on white collar fraud where he had sparse experience working on mortgage fraud cases, had never been qualified as an expert in any case involving

mortgage fraud, had no specialized training or classes in mortgage fraud, and was seemingly unaware of basic statutes which govern the field).

Finally, McWhorter's expert report is also inadmissible because it purports to give an answer to the legal question of whether the Tankermen are exempt under the FLSA. But, it is up to the Court, not McWhorter, to apply the law, and answer that question. *See Lott*, 203 F.3d at 331 (However, "[t]he ultimate decision whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law."); *cf. Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900–01 (7th Cir. 1994) (finding that the meaning of federal regulations was issue of law, not an issue of fact for experts to speculate upon); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan & Trust Agreement*, 812 F. Supp. 1376, 1378 (E.D. Pa.1992) (an expert's "opinion on a question of law" is not admissible). Hence, McWorter's report also constitutes an inadmissible legal conclusion. For example, in *Cowan v. Treetop Enterprises, Inc.*, 120 F. Supp. 2d 672 (M.D. Tenn. 1999), the court granted a motion to strike the report of a defendant's expert in an FLSA case who had opined that fast food managers were "primarily responsible" for the profitable operation of the restaurant. The court noted that the distinct legal meaning of the term "primary responsibility" under the FSLA was a legal issue that should be decided by the court, not by the expert. *Id*. at 684. The same reasoning applies here regarding the definition of a "seaman," and provides a further basis for striking McWhorter's expert report. *Id*.; *see also Marting v. Crawford & Co.*, NO. 00 C 7132, 2004 WL 305724, at *3 (N.D. Ill. Jan. 9, 2004) (excluding expert report in an FLSA action for essentially the same reasons).

## VI.   CONCLUSION

"[S]ummary judgment is an extreme and drastic measure which courts should use sparingly and only in the clearest of cases." *Printy v. Crochet & Borel Services*, 196 F.R.D. 46, 50 (E.D. Tex. 2000). This is hardly such a case. First, to be entitled to summary judgment, BMSI had to prove as a matter of law that Plaintiffs did not spend more than 20% of their working time performing non-seaman's work. BMSI did not come close to doing so – in fact, it did not even try, instead relying solely on the very same "extremely broad and unsupportable construction of 'aid in operation' of a 'vessel as a means of transportation" that the Fifth Circuit flatly rejected in *Owens*. Second, while Plaintiffs had no burden to prove it is so, a reasonable jury could easily conclude that the Plaintiffs spent more than 20% of their working time performing non-seaman's work – specifically, loading and unloading, and activities relative thereto. *See supra*. In fact, on this record, a reasonable jury would have no choice but to reach such a conclusion. In short, BMSI's motion is a double fault failure.

Therefore, Plaintiffs pray that the Court deny BMSI's Motion for Summary Judgment on Plaintiffs' Seaman Status Under the FLSA, and:

- Set a trial date;

- Set a deadline for Plaintiffs to file their own motions for summary judgment; or

- Give notice to BMSI of the Court's intent to grant summary judgment for Plaintiffs on liability, and give BMSI a reasonable time to respond, pursuant to Federal Rule of Civil Procedure 56(f).

In addition, Plaintiffs respectfully request the Court to strike Tom McWhorter's expert report.

Respectfully submitted,

OBERTI SULLIVAN LLP


By:     s/ Mark J. Oberti
      Mark J. Oberti
      Texas Bar No. 00789951
      Southern District ID. No. 17918
      723 Main Street, Suite 340
      Houston, Texas 77002
      (713) 401-3555 – Telephone
      (713) 401-3547 – Facsimile
      mark@osattorneys.com – Email

      ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
Southern District ID No. 24524
Marilynne Gorham
State Bar No. 00790780
Southern District ID No. 19331
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, Texas 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email
mgorham@osattorneys.com – Email

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served to all counsel of record, as listed below, by CM/ECF on this the 26th day of October 2012.

Steven F. Griffith, Jr.
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana 70170

Thomas J. "Beau" Bethune IV
General Counsel
Blessey Marine Services, Inc.
1515 River Oaks Rd. E.
Harahan, Louisiana 70123

s/ Mark J. Oberti
Mark J. Oberti

## INDEX OF EXHIBITS

The following exhibits are incorporated into the preceding motion as if set out verbatim.

| DESCRIPTION | EXHIBIT |
|---|:---:|
| Dustyn Grenon's Complete Deposition | A |
| Fulkerson Declaration with BMSI Captains Logs Bates labeled BM 007611 through BM 007997 | B |
| Latiolais Declaration with BMSI Captains Logs Bates labeled BM 003143 through BM 003271 | C |
| Fox Declaration with BMSI Captains Logs Bates labeled BM 004546 through BM 004956 | D |
| Robinson Declaration with BMSI Captains Logs Bates labeled BM 003712 through BM 004167 | E |
| Villarreal Declaration with BMSI Captains Logs Bates labeled BM 004192 through BM 004531 | F |
| Rangel Declaration with BMSI Captains Logs Bates labeled BM 003302 through BM 003682 | G |
| Akins Declaration with BMSI Captains Logs Bates labeled BM 005059 through BM 005609 and BM 007998 through BM 008006 | H |
| Coffin Affidavit with BMSI Captains Logs Bates labeled BM 000391 through BM 000896 | I |
| Fulkerson Affidavit | J |
| Latiolais Affidavit | K |
| Fox Affidavit | L |
| Robinson Affidavit | M |

| DESCRIPTION | EXHIBIT |
| --- | --- |
| Villarreal Affidavit | N |
| Rangel Affidavit | O |
| Akins Affidavit | P |
| Jones Affidavit | Q |
| BMSI's Tankerman Job Description | R |
| BMSI's Deckhand Job Description | S |
| Letter from Steve Griffith to All Current BMSI Tankermen of 08/09/11 | T |
| Coffin Deposition Excerpts | U |
| *McLaughlin v. King Welding, Inc.*, No. 86-1379-WJK(GX), 1988 WL 81539 (C.D. Cal Mar. 15, 1988) | V |